Demetrius Terrence Frazier was convicted of capital murder for the death of Pauline Brown. The jury, by a vote of 10 to 2, recommended the death penalty. The trial judge, after independently weighing the aggravating and mitigating factors, agreed with the jury's recommendation and sentenced Frazier to death. The Court of Criminal Appeals affirmed Frazier's conviction and sentence. See Frazier v. State, 758 So.2d 577
(Ala.Crim.App. 1999). This Court granted Frazier's petition for certiorari review and heard oral arguments. We now affirm the judgment of the Court of Criminal Appeals.
 I.
Frazier was arrested in Detroit, Michigan, in March 1992, on a charge not related to the present case. While in the custody of the Detroit Police Department, *Page 613 
Frazier was interrogated by Detective Kenneth Bresnahan. During this interrogation, Frazier confessed to the murder of a woman in Fountain Heights Apartments at Birmingham, Alabama. Detective Bresnahan contacted the Birmingham Police Department. Detective Kenneth Glass of the Birmingham Police Department traveled to Detroit to further interrogate Frazier. Frazier gave Detective Glass a statement, which was recorded on audiotape. In that statement, Frazier again confessed to the murder.
His statement related the following facts: Early on the morning of November 26, 1991, Frazier saw a light on in Pauline Brown's ground-floor apartment at the Fountain Heights Apartment complex in Birmingham. He removed a screen and entered the apartment through a window. Frazier searched the apartment and found $5 or $10 in one of the bedrooms. Frazier then heard a television set on in one of the other bedrooms and went to that bedroom to see if anyone was there. He found Ms. Brown asleep in the bedroom. He awakened her. Armed with a .22 caliber pistol, he demanded more money. Ms. Brown gave him $80 from her purse. Frazier then forced her at gunpoint to have sexual intercourse with him. While he was raping her, Ms. Brown begged Frazier not to kill her. When Ms. Brown refused to stop begging for her life, Frazier put the pistol to the back of her head and fired the gun. Fearing that someone had heard the gunshot, Frazier left the apartment. He went across the street to see if anyone had heard the shot. Satisfied that no one had heard the shot, he returned to the apartment. He searched the apartment for more money and confirmed that Ms. Brown was dead. He then went to the kitchen, ate two bananas, and left the apartment. He threw the pistol in a ditch. A Jefferson County grand jury indicted Frazier on three counts of capital murder. Count I charged Frazier with the offense of murder made capital because it occurred during a robbery. See Ala. Code 1975, § 13A-5-40(a)(2). Count II charged Frazier with the offense of murder made capital because it occurred during a burglary. See Ala. Code 1975, § 13A-5-40(a)(4). Count III charged Frazier with the offense of murder made capital because it occurred during a rape. See Ala. Code 1975, §13A-5-40(a)(3). Frazier, who had been 19 years old at the time of the crime, applied for youthful-offender status. Following a hearing, the trial court denied his application. At his arraignment, Frazier pleaded not guilty to the charges in the indictment. Defense counsel filed several pretrial motions, including a motion to suppress Frazier's statements and a motion for a court-ordered mental examination. The court denied both motions.
As to Count I of the indictment (murder during a robbery), the jury found Frazier guilty of capital murder, as charged; as to Count III of the indictment (murder during a rape), it found him guilty of the lesser-included offense of intentional murder. The jury was unable to reach a verdict on Count II of the indictment (murder during a burglary), and the court declared a mistrial as to that count.
As to Frazier's capital-murder conviction under Count I, the jury recommended, and the trial court imposed, a sentence of death. As to his conviction for the lesser-included offense of intentional murder under Count III of the indictment, the trial court sentenced him to life imprisonment.
The Court of Criminal Appeals affirmed Frazier's conviction and sentence of death as to Count I. However, that court, relying on Borden v. State, 711 So.2d 498, 503 (Ala.Crim.App. 1997) ("[W]here . . . the jury returns guilty verdicts for both a capital offense alleged in one count of the indictment and [as to a capital offense alleged in another count of the indictment,] the lesser included offense of intentional murder . . . and the same murder was an element of the capital offense and the intentional murder conviction, the trial court *Page 614 
should enter a judgment on only one of the offenses.") and Mangionev. State, 740 So.2d 444, 449 (Ala.Crim.App. 1998) ("[T]he prohibition against double jeopardy was violated when the [defendant] was convicted of the capital offense of murder during the course of a kidnapping under Count I of the indictment and also was convicted of the lesser-included offense of intentional murder under Count III of the indictment, because the `same murder was an element of the capital offense and the intentional murder conviction.'"), reversed Frazier's conviction for intentional murder under Count III and remanded with directions for the trial court to vacate that conviction, holding that "the trial court could not adjudge the [defendant] guilty of both capital murder under Count I of the indictment and the lesser-included offense of intentional murder under Count III." Frazier v. State, 758 So.2d at 583.
 II.
In his certiorari petition, Frazier raises several issues concerning the merits of his conviction and sentence, all of which he raised on appeal to the Court of Criminal Appeals. We have carefully reviewed all the issues presented in the petition and discussed in the briefs and at oral argument, and we have studied the opinion of the Court of Criminal Appeals. Most of the issues Frazier raises here were fully and adequately addressed in the opinion of the Court1 of Criminal Appeals. We write to more fully address and clarify two of those issues.
 III.
Frazier argues that the trial court committed reversible error by failing to instruct the jury to ignore an outburst in which Frazier threw an object toward the jury and accused the jury of being racist. During the prosecutor's opening statement, Frazier threw a writing pen in the direction of the prosecutor and the jury. The pen narrowly missed one of the jurors. Frazier then yelled the following:
 "Shut the fuck up. That jury right there is racist, man. That jury is racist, man, look at them. That guy looking at me, man. That jury is racist, man. That jury is racist, man. Look at them. Look at that jury, man, 10 motherfucking white jurors up there. Fuck that."
Frazier was escorted out of the courtroom, and the court instructed the prosecutor to continue. Before the prosecutor resumed his opening statement, Frazier's counsel moved for a mistrial, arguing that the jury would not be able to render an impartial verdict, because of Frazier's inflammatory remarks. The trial court denied that motion.
The court then discussed with the attorneys whether the trial could proceed in Frazier's absence. Ultimately, the court decided to move the trial to a different courtroom, so that Frazier could observe the trial from a media room. The court then recessed for lunch. When the proceedings resumed, Frazier's counsel moved the court to poll the jury "as to any possible reactions they might have with regard to the remarks that Mr. Frazier made and the actions he took this morning that could possibly influence them or perhaps even prejudice them against the defendant with regard to the trial, itself." The trial court asked the jurors whether they would be able to give the State and the defendant a fair trial, and none indicated he could not.
Frazier argues that the trial court committed reversible error by failing to instruct the jury to disregard his outburst. Frazier's counsel did not request such an instruction. In reviewing this issue, the Court of Criminal Appeals stated that "[a]lthough perhaps the better practice would have been to question the jurors immediately regarding any prejudice [that may have occurred] as a result of the [defendant's] outburst, and then to instruct the jurors to disregard the . . . disruptive behavior, under the unique facts of this case we cannot say that the failure to do so *Page 615 
amounted to plain error." 758 So.2d at 596. We write to clarify that a review of the trial court's failure to give a curative instruction is a review for reversible error, not for plain error, because "a motion for mistrial includes all lesser prayers for relief, including a motion to strike." Campbell v. State, 570 So.2d 1276, 1281
(Ala.Crim.App. 1990) (citing Ex parte Marek, 556 So.2d 375,379 (Ala. 1989). However, we conclude that the trial court did not err in failing to give a curative instruction.
"[O]ne cannot purposefully create grounds for a mistrial by deliberately causing a disturbance during the trial." Hayes v.State, 340 So.2d 1142, 1143 (Ala.Crim.App. 1976) (citingIllinois v. Allen, 397 U.S. 337 (1970)). A court "will not allow a defendant to benefit from his own misconduct in the courtroom."Id. "[O]therwise a defendant faced with imminent conviction could disrupt the trial, prejudice himself in the jury's eyes and, therefore, be entitled to another trial." Id. The trial court concluded that Frazier's outburst was purposeful, and, accordingly, denied relief except for polling the jury. The failure to declare a mistrial or to instruct the jury to ignore Frazier's outburst was not error.
 IV.
Frazier also argues that his attorneys were ineffective for various reasons. The Court of Criminal Appeals adequately addressed these arguments in its opinion. We write only to emphasize that a defendant's bare allegation that his attorney failed to challenge the prosecution's use of peremptory strikes under Batson v. Kentucky, 476 U.S. 79 (1986), does not entitle that defendant to a new trial based on a claim of ineffective assistance of counsel. Likewise, a bare allegation that his attorney failed to preserve the Batson issue for appellate review by not making a record of the race and gender of potential jurors against whom the prosecution used peremptory strikes does not entitle a defendant to a new trial based on a claim of ineffective assistance of counsel.
To prevail on a claim of ineffective assistance of counsel, the defendant must meet the two-pronged test set forth inStrickland v. Washington, 466 U.S. 668 (1984):
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ."
466 U.S. at 687. In Ex parte Yelder, 575 So.2d 137 (Ala. 1991), this Court held that the second prong of the Strickland test — a showing of prejudice to the defense — is presumptively met when trial counsel fails "to make a timely Batson objection to a prima facie case of purposeful discrimination by the State in the jury selection process through its use of peremptory challenges." 575 So.2d at 139. However, that holding in Yelder does not relieve the defendant of his burden of meeting the first prong of theStrickland test — a showing of deficient performance by counsel.
A defendant seeking a new trial based on a claim of ineffective assistance of counsel should raise this issue in a timely motion for a new trial. See Rule 24.1, Ala.R.Crim.P.;Ex parte Ingram, 675 So.2d 863 (Ala. 1996). Ordinarily, a defendant's failure to raise the claim in this manner will preclude review of this issue on direct appeal.[1] SeeIngram, 675 So.2d at 865. However, in a death-penalty *Page 616 
case, the Court of Criminal Appeals will review the defendant's claim of ineffective assistance of counsel on direct appeal, under the plain-error rule, even if he did not preserve the issue in a timely motion for a new trial. See Rule 45A, Ala.R.App.P. In a certiorari review of the judgment of the Court of Criminal Appeals, this Court will likewise review such a claim under the plain-error rule. See Rule 39(k), Ala.R.App.P.
To prevail on a claim of ineffective assistance of counsel based on an attorney's failure to make a Batson motion, a defendant must show that there was a prima facie case of "purposeful discrimination by the State in the jury selection process." Yelder, 575 So.2d at 138. If the record does not show a prima facie case of purposeful discrimination, then an appellate court will not assume that the defendant's attorney was ineffective in not making a Batson motion. See, e.g., Patrick v.State, 680 So.2d 959, 962 (Ala.Crim.App. 1996). Rather, there is "a strong presumption that counsel's conduct was appropriate and reasonable." Id. at 961 (quoting earlier cases). When there has been a prima facie case of purposeful discrimination, but the record does not show it because the defense attorney failed to preserve in the record an indication of the race or gender of the potential jurors against whom the prosecution asserted peremptory strikes, it is incumbent on the defendant to seek to supplement the record with information sufficient to show the prima facie case of purposeful discrimination. See Rule 10(d) and (f), Ala.R.App.P.; see also, e.g., Patrick v. State, 680 So.2d at 961 ("It is the appellant's duty to provide this court with a complete record on appeal. We cannot predicate error on a silent record." (quoting earlier cases; citations omitted)).
Frazier did not raise the issue of ineffective assistance of counsel in a motion for a new trial. Thus, the Court of Criminal Appeals applied the plain-error rule, see Rule 45A, Ala.R.App.P., and this Court will also apply the plain-error rule, see Rule 39(k), Ala.R.App.P. The record before us does not show a prima facie case of purposeful discrimination by the prosecution in the jury-selection process. Thus, there is no plain error requiring us to remand this case for a new trial based on ineffective assistance of counsel.
Frazier blames his attorneys for the fact that the record does not permit review of the Batson issue, and he urges us to remand this case for a new trial because his attorneys failed to preserve this issue for review. However, Frazier has not sought to supplement the record with information sufficient to show a prima facie case of purposeful discrimination. Indeed, Frazier does not even argue that a prima facie case existed. Failure to make a record of the race or gender of persons against whom the prosecution asserted peremptory strikes is not per se ineffective assistance of counsel; it would constitute ineffective assistance only if a prima facie case of purposeful discrimination existed. See Ex parte Yelder, 575 So.2d at 139. Thus, we cannot say that the failure of Frazier's trial counsel to preserve the Batson
issue for appellate review was plain error.
 V.
In addition to considering Frazier's arguments, we have examined the entire record for plain error. We find no error, plain or otherwise, either in the guilt phase or in the sentencing phase of Frazier's trial that would warrant a reversal of his conviction or his sentence. We therefore affirm the judgment of the Court of Criminal Appeals. *Page 617 
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, Lyons, and Johnstone, JJ., concur.
Brown, J., recuses herself.
[1] The failure to preserve the issue of ineffective assistance of counsel for review on direct appeal does not necessarily preclude appellate review of this issue. A claim of ineffective assistance of counsel may be brought by petitioning the trial court for a new trial pursuant to Rule 32.1(a), Ala.R.Crim.P. See Ex parte Ingram, 675 So.2d at 866. If the trial court denies relief, the defendant may appeal to the Court of Criminal Appeals, pursuant to Rule 32.10, Ala.R.Crim.P. *Page 1097