Ronnie Lee BOWLING, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2003–SC–0645–MR.

Supreme Court of Kentucky.

Nov. 18, 2004.

As Modified Dec. 17, 2004.

Rehearing Denied Aug. 25, 2005.

**4**

Susan M.J. Martin, Department of Public Advocacy, Frankfort, David Hare Har- shaw, III, Department of Public Advocacy, La Grange, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Ian G. Sonego, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

In 1992, a Laurel Circuit Court jury convicted Appellant, Ronnie Lee Bowling, of two counts each of murder, burglary in the first-degree, and robbery in the first degree. The trial court accepted the jury's penalty recommendations, imposing two death sentences for the murder convictions, and four consecutive twenty-year terms for the remaining convictions. Those convictions and sentences were affirmed on appeal. *Bowling v. Commonwealth,* Ky., 942 S.W.2d 293 (1997), *cert. denied,* 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997). In 1998, the Laurel Circuit Court denied Appellant's RCr 11.42 motion to vacate the sentence. That decision was also affirmed. *Bowling v. Commonwealth,* Ky., 80 S.W.3d 405 (2002), *cert. denied,* 538 U.S. 931, 123 S.Ct. 1587, 155 L.Ed.2d 327 (2003).

On November 22, 2002, during the pendency of the appeal from the denial of his RCr 11.42 motion, almost ten years after entry of the judgment of his convictions, and more than five years after that judgment became final, Appellant filed a motion for a new trial under RCr 10.02 and CR 60.02. This appeal is before us as a matter of right, CR 74.02(2), from the Laurel Circuit Court's denial of that motion. Appellant contends he was entitled to a new trial because of newly discovered evidence that (1) he was denied an impartial jury because a juror gave false answers during voir dire; (2) the jury was biased against him because of his own behavior and that of a key defense witness;

and (3) the trial judge had impermissible *ex parte* contacts with the jurors and alternate jurors after they had been discharged. Whether to grant a new trial on grounds of newly discovered evidence is largely within the discretion of the trial court and a denial of the motion is reviewed only for abuse of discretion. *Foley v. Commonwealth*, Ky., 55 S.W.3d 809, 814 (2000). Finding that the trial court did not abuse its discretion in denying Appellant's motion, we affirm.

## I. TIMELINESS.

At the conclusion of Appellant's trial, the trial court issued a verbal order forbidding all parties from contacting or interviewing the jurors. Appellant did not appeal from that order. After we affirmed his convictions and sentences on direct appeal, Appellant filed a motion in the circuit court to lift the no-contact order. The trial court denied that motion (and others) on grounds that it was without jurisdiction to rule on any motions until Appellant filed an RCr 11.42 motion. Appellant appealed that order and we affirmed. *Bowling v. Commonwealth*, Ky., 964 S.W.2d 803 (1998). Appellant then filed his RCr 11.42 motion. On August 7, 1998, Appellant again filed a motion to lift the no-contact order. On September 3, 1998, the trial court overruled the RCr 11.42 motion; on October 1, 1998, it overruled the motion to lift the no-contact order. Appellant appealed both rulings, and both rulings were affirmed. *Bowling*, 80 S.W.3d at 422, 424. While that appeal was pending, we rendered *Cape Publications, Inc. v. Braden*, Ky., 39 S.W.3d 823 (2001), holding that a trial court is without jurisdiction to control access to jurors after conclusion of trial-level proceedings. *Id.* at 827. *Cape Publications* was rendered on March 22, 2001. Appellant began interviewing the trial jurors on November 20, 2001, and concluded those interviews on December 19, 2001. It is the information obtained during those interviews that forms the basis for his new trial motion. The opinion affirming the order denying his motion to set aside the no-contact order was rendered on March 21, 2002, and became final on August 22, 2002, *more than eight months after Appellant concluded the juror interviews.*[1] Appellant filed his motion for a new trial on grounds of "newly discovered evidence" on November 20, 2002. RCr 10.02; CR 60.02(b).

■ The Commonwealth contends that Appellant's motion is untimely because he filed it nearly a decade after entry of the final judgment.[2] We agree. RCr 10.06(1) provides, *inter alia:*

> A motion for a new trial based upon the ground of newly discovered evidence shall be made within one (1) year after

---

1. Although the opinion did not specify the reasons for the affirmance, it presumably was because the order became the "law of the case" when Appellant did not challenge it on his direct appeal. *Commonwealth v. Schaefer*, Ky., 639 S.W.2d 776 (1982). *See also Arbelaez v. State*, 775 So.2d 909, 920 (Fla.2000) ("Any claims relating to [defendant's] inability to interview jurors should and could have been raised on direct appeal.").

2. The trial court did not address this issue. However, Appellant is incorrect in his assertion that the Commonwealth was required to "preserve" this issue for appeal by objection or, alternatively, by cross-appeal. First, the Commonwealth raised the issue of timeliness below in its answer to Appellant's motion for a new trial. Second, a cross-appeal was not required because the result reached by the trial court was not adverse to the Commonwealth. *Brown v. Barkley*, Ky., 628 S.W.2d 616, 618 (1982); *cf. Commonwealth v. Vester*, Ky., 956 S.W.2d 204, 205–06 (1997) (on appeal from Board of Claims, prevailing party was not required to file a cross-appeal to assert that the Board reached the right result for the wrong reason).

the entry of the judgment *or at a later time if the court for good cause so permits.*

(Emphasis added.) Likewise, CR 60.02 limits the time for making a motion for a new trial on the grounds of newly discovered evidence to one year if the evidence "by due diligence could not have been discovered in time to move for a new trial under CR 59.02" (ten days after judgment).[3] Unlike RCr 10.06(1), however, CR 60.02 contains no provision for extending the time limit past one year.

Appellant does not assert and the record does not indicate that he ever made a motion in the trial court for an extension of time past one year to file his motion. *Perkins v. Commonwealth*, Ky., 382 S.W.2d 393, 394 (1964) (motion filed more than one year after judgment became final was untimely where "[t]here [was] no showing that the time was extended"). Appellant asserts that the court's no-contact order prevented him from obtaining the evidence in support of his motion within one year of the judgment. That fact, however, only provided grounds to support a motion to extend past one year the time for making the motion. Even if the no-contact order could be deemed to have tolled the time for filing the motion (Appellant cites no authority for that proposition), his motion is still time-barred because he filed it more than one year after *Cape Publications* became final. *Benes v. United States*, 276 F.2d 99, 109 (6th Cir.1960) (even accepting government's argument that period during which government was enjoined from presenting case to grand jury should not be counted toward expiration of period of limitations, only five months and fifteen days would have been so tolled or suspended,

and indictment was still untimely because not issued during extended period). Appellant obviously believed that *Cape Publications* rendered the no-contact order a nullity as a matter of law; for he conducted his interviews of the jurors *before* we *affirmed* the trial court's refusal to vacate the order.

█ Nor did the pendency of Appellant's appeal of the trial court's refusal to set aside the no-contact order toll the one-year period for filing the motion for a new trial. *Meredith v. Commonwealth*, Ky., 312 S.W.2d 460, 462 (1958) ("The remedy provided by CR 60.02(1, 2 and 3), must be sought within the year even though an appeal is being prosecuted."); *Wilson v. Commonwealth*, Ky.App., 761 S.W.2d 182, 184–85 (1988) ("The wisdom of permitting such an independent attack on the conviction [by way of RCr 10.02] to proceed without awaiting the disposition of the direct appeal should be apparent. In the first place, the independent attack may render the direct appeal unnecessary."). Even without the procedural default, however, Appellant would not be entitled to relief, as his arguments lack merit. Because this is a death penalty case, we choose to address the merits of Appellant's arguments.

## II. ALLEGED JUROR MISCONDUCT.

█ Appellant premises his first ground for a new trial upon an interview that Valerie Bryan and Douglas Blair, both investigators for the Department of Public Advocacy (DPA), had with a trial juror, Juror 64, on November 19, 2001. Bryan executed two affidavits and Blair executed one affidavit concerning information pro-

---

**3.** CR 60.02(f) is not applicable in this case, because Appellant did not specifically invoke it. *Hartford Accident & Indem. Co. v. Lewis*, Ky., 296 S.W.2d 228, 231 (1956) ("We hold that ground 6 [now (f) ] must be clearly stated in a written motion or petition attempting to invoke it.").

vided by Juror 64 during this interview. All three affidavits were executed on November 19, 2002, one year after the interview and one day before the filing of the motion for a new trial. One of Bryan's affidavits contains the following statement: "[Juror 64] stated to us that he believed it was necessary for Mr. Bowling to prove that he was innocent in order for [Juror 64] to have reached a not guilty verdict." [4] Although Blair's affidavit repeated the other information related in Bryan's affidavits, it does not mention this statement.

### 1. Impeachment of verdict.

■ "A juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." RCr 10.04. Thus, in *Gall v. Commonwealth*, Ky., 702 S.W.2d 37 (1985), we held incompetent a juror's testimony that the jury improperly considered Appellant's mental illness and parole eligibility during penalty phase deliberations. *Id.* at 44. In *Grace v. Commonwealth*, Ky., 459 S.W.2d 143 (1970), our predecessor court held that RCr 10.04 precluded consideration of the affidavit of a juror who swore that she had not agreed to the verdict. *See also Howard v. Commonwealth*, Ky., 240 S.W.2d 616, 619 (1951) (same result under former Criminal Code of Practice § 272). In *Jones v. Commonwealth*, Ky., 450 S.W.2d 812, 814 (1970), our predecessor court held that RCr 10.04 precluded consideration of an affidavit of a juror that the jurors had considered matters not in evidence during their deliberations. It has long been the rule that jurors may give evidence to prove that the jury was not guilty of misconduct but may not impeach the verdict by stating that they acted wrongfully or irregularly.

*Bowman v. Commonwealth*, 284 Ky. 103, 143 S.W.2d 1051, 1054 (1940).

The Sixth Circuit has also endorsed the incompetence of such evidence, in the course of holding unconstitutional an interpretation of Ohio Rule of Evidence 606(B) that precluded consideration of an affidavit attesting to improper outside influence on the jury (namely that one juror performed an outside experiment and shared the results with the other jurors). *Doan v. Brigano*, 237 F.3d 722, 733 (6th Cir.2001) ("A review of this misconduct stands in stark contrast to an examination of internal factors affecting the jury. Whether the jury understood the evidence presented at trial or the judge's instructions following the presentation of the evidence ... are all internal matters for which juror testimony may not be used to challenge a final verdict."), *abrogated on other grounds as recognized by Maples v. Stegall*, 340 F.3d 433 (6th Cir.2003). The same result would obtain in a case originally tried in our federal courts:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.

---

4. We need not decide whether hearsay is admissible at a hearing on a motion for a new trial. The trial court declined to hold an evidentiary hearing, thus accepting the affidavits in lieu of sworn testimony. Whether to hold an evidentiary hearing on a motion for a new trial is within the sound discretion of the trial court. *Foley*, 55 S.W.3d at 816; *Wheeler v. Commonwealth*, Ky., 395 S.W.2d 569, 572 (1965).

Fed. R. Ev. 606(b). The United States Supreme Court adopted the rule as a matter of public policy long before the adoption of the rules of evidence.

> Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because, being personal, it is not accessible to other testimony. It gives to the secret thought of one the power to disturb the expressed conclusions of twelve. Its tendency is to produce bad faith on the part of a minority; to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict.

*Mattox v. United States*, 146 U.S. 140, 148, 13 S.Ct. 50, 52, 36 L.Ed. 917 (1892) (quotation omitted). Thus, Juror 64's alleged statement to the DPA investigators could not be used to impeach the verdict by showing misconduct on his part during deliberations.

### 2. *False answers during voir dire.*

■ Alternatively, Appellant argues that Juror 64's statement proves that he gave false answers during voir dire and thereby prevented Appellant both from intelligently exercising his peremptory strikes and from challenging Juror 64 for cause. The court extensively questioned Juror 64 with respect to whether he understood the presumption of innocence and the Commonwealth's burden of proof. However, there were only three instances in which the court asked Juror 64 if he would agree to apply those principles. The first occurred when the trial court asked Juror 64 if he agreed that Appellant was presumed to be innocent "as he sits here," *i.e.*, before any evidence is presented.

> Court: Let me state this in another way to you; okay, I'm talking hypothetical right now, if you become charged with a crime, okay?
>
> Juror: Uh-huh.
>
> Court: And we're talking about you, becomes charged with a crime; okay. At that moment in time, you under our constitution have the presumption of innocence?
>
> Juror: Uh-huh.
>
> Court: That you're innocent until proven guilty beyond a reasonable doubt; do you understand that?
>
> Juror: Yeah, uh-huh, I understand that.
>
> Court: Okay, you understand that as this defendant sits here, he is presumed to be innocent?
>
> Juror: Uh-huh. I understand that.
>
> Court: Okay, do you agree with that and will abide by that?
>
> Juror: Yeah, uh-huh.

■ The second occasion occurred when the trial court asked Juror 64 to assume hypothetically that the prosecutor "comes in and he announces he has no evidence to introduce in the trial," and asked, "in that hypothetical, what would your decision be?" Juror 64 responded:

> Guy'd have to be innocent. Until you've got—if you have a eyewitness or proof, I mean you've got to have eyewitness; you innocent until proven guilty.... If you can't prove it, you innocent.

The trial court then asked Juror 64 to assume hypothetically (1) the Commonwealth presented evidence that did not convince him of Appellant's guilt, and (2) Appellant presented no evidence. Again, the juror replied that he would find Appellant:

> Not guilty, because you still ain't got no evidence, I mean you've the—just take for example, say I committed a crime, or just say that I was a victim, you know what I'm talking about? Say it was a robbery at the bank, out on [highway]

25. And somebody see me walking down the road, so they picked me up, you know at the same time that the crime occurred; and say I was a victim, okay, and they can't prove me guilty until they have—they got to have some kind of evidence in order for me to be guilty. You know what I'm talking about? ... I mean they can't just pick me up and say he's guilty, he's the one robbed the bank. I mean it's still the same case; I mean if you ain't got no eyewitness how can you call a person guilty?

Appellant claims Juror 64's statement to the investigators proves that he lied when he made these three statements during voir dire.

To obtain a new trial because of juror mendacity, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause."

*Adkins v. Commonwealth,* Ky., 96 S.W.3d 779, 796 (2003) (quoting *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)). *McDonough* also noted that expecting jurors to perfectly understand certain terms and concepts is unrealistic because "[c]alled as [jurors] are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges." 464 U.S. at 555, 104 S.Ct. at 849. Furthermore, "[t]he cases in which juror statements have been considered generally have involved deliberate or inadvertent nondisclosure of pertinent historical facts during voir dire; courts have been much more hesitant to consider statements that jurors failed to put personal prejudices aside during deliberations." *Brofford v. Marshall,* 751 F.2d 845, 853 (6th Cir.1985).

In overruling Appellant's motion for a new trial, the trial court obviously believed that Juror 64's statement to the investigators did not prove that he gave dishonest answers during voir dire ten years before. That finding is supported by a reasonable interpretation of the juror's statements, thus was not clearly erroneous. *Commonwealth v. Deloney,* Ky., 20 S.W.3d 471, 474 (2000) ("The bottom line is that the trial judge's finding that Clemons's comment was inadvertent and did not amount to bad faith, overreaching, or fundamentally unfair conduct was supported by substantial evidence, thus was not clearly erroneous...."). What Juror 64 said during voir dire was that he would presume Appellant innocent "as he sits here" before any evidence is presented; that he would find Appellant not guilty if the Commonwealth presented no evidence; and that he would find him not guilty if the Commonwealth did not prove him guilty beyond a reasonable doubt even if Appellant presented no evidence. However, he did not say that he would not expect Appellant to present evidence of his innocence if the Commonwealth presented sufficient evidence of his guilt to otherwise support a conviction. Juror 64's statement to the investigators is consistent with the latter scenario, thus does not compel a finding that he intentionally lied under oath during voir dire.

### III. OUTSIDE INFLUENCE.

Appellant complains that the jury was exposed to improper outside influences. Although RCr 10.04 facially proscribes juror testimony about anything that occurred in the jury room unless the testimony establishes that the verdict was made by lot, an interpretation of RCr 10.04 that would exclude evidence of outside influence obviously would implicate a defendant's Sixth Amendment right to confrontation, because the jury would be ex-

posed *ex parte* to evidence that was not subject to cross-examination. *See Parker v. Gladden,* 385 U.S. 363, 364–65, 87 S.Ct. 468, 470, 17 L.Ed.2d 420 (1966); *Turner v. Louisiana,* 379 U.S. 466, 472–73, 85 S.Ct. 546, 550, 13 L.Ed.2d 424 (1965). In *Doan v. Brigano,* the Sixth Circuit declared that an Ohio Rule of Evidence proscribing juror testimony on outside influence absent evidence independent of that furnished by the jurors, themselves, was unconstitutional as contrary to established Supreme Court precedent. *Doan,* 237 F.3d at 732. Specifically, in *Mattox v. United States,* the juror affidavits described one instance in which the bailiff made inappropriate remarks to them regarding the defendant's guilt and informed them that this was the third man he had killed, 146 U.S. at 142, 13 S.Ct. at 51, and another instance in which a newspaper article that commented on the strength of the evidence against the defendant was brought into the jury room and read aloud in the presence of the jury. *Id.* at 143, 13 S.Ct. at 51–52. Distinguishing between the "secret thought[s] of one [juror]" and the exposure of the jury to extraneous prejudicial information, the Court held that the evidence of outside influence was admissible and required a new trial. *Id.* at 148–49, 153, 13 S.Ct. at 53–54. Likewise, in *Parker,* the Court ordered a new trial where the bailiff told the jury during deliberations that the defendant was a "wicked man," that he was guilty, and that any error in finding the defendant guilty would be corrected by the Supreme Court. *Id.* at 363–64, 87 S.Ct. at 470.

Similarly, in *Ne Camp v. Commonwealth,* 311 Ky. 676, 225 S.W.2d 109, 112 (1949), our predecessor court held that Criminal Code of Practice § 272, which contained language identical to RCr 10.04, could not be used to render incompetent evidence that a juror told another juror during deliberations that she had sought the advice of a priest who advised her that

it would not be a sin to impose the death penalty. And in *Hodge v. Commonwealth,* Ky., 68 S.W.3d 338 (2001), we remanded an appeal from the denial of an RCr 11.42 motion in a death penalty case for an evidentiary hearing on an allegation of jury tampering during deliberations. *Id.* at 341–42.

Several of the juror affidavits in this case related an incident in which one of the jurors raised a window in the jury room and observed one of Appellant's male relatives who had been a key defense witness standing outside and staring at the jury room window. This caused some of the jurors to become uncomfortable, and they requested the sheriff to ask the man to move away from the window. The seminal case on inappropriate juror contacts, *Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), states that "any private communication, contact, or tampering directly or indirectly, with a juror during a trial ... is, for obvious reasons, deemed presumptively prejudicial ...." *Id.* at 229, 74 S.Ct. at 451. However, a hearing is required "only when the alleged contact presents a likelihood of affecting the verdict," and bias is not implied, but must be demonstrated by the moving party. *United States v. Frost,* 125 F.3d 346, 377 (6th Cir.1997).

This particular "contact" was brief and limited. *United States v. Walton,* 908 F.2d 1289, 1297 (6th Cir.1990). It would be tenuous, at best, to conclude that a brief look, or even a glare, required a finding of bias. *White v. Smith,* 984 F.2d 163, 165 (6th Cir.1993) (defendant's mother's remark to the jurors that she would pray for them was innocuous); *United States v. Marques,* 600 F.2d 742, 747 (9th Cir.1979) (no hearing required where juror merely saw the four defendants in the case entering the same car). Additionally, all of the cases upon which Appellant relies involved

much more significant contact than occurred in the case *sub judice. See, e.g., United States v. Jackson,* 209 F.3d 1103, 1107–08 (9th Cir.2000) (threatening telephone call); *United States v. Cheek,* 94 F.3d 136, 139 (4th Cir.1996) (bail bondsman claiming to be a representative of the court took juror to what apparently was intended to be a meeting with defendant); *Krause v. Rhodes,* 570 F.2d 563, 565 (6th Cir.1977) (direct threats against juror and his family); *State v. Bailey,* 713 So.2d 588, 608–09 (La.Ct.App.1998) (juror told other jurors that his wife had received a telephone call from a person with the same name as defendant and that the caller had asked to speak to their daughter); *State v. Bisaccia,* 319 N.J.Super. 1, 724 A.2d 836, 839 (1999) (two jurors were followed by a man whom they had seen in the courtroom). Jurors are often exposed during trial to numerous witnesses and spectators. To conclude that a mere unkind look from one of them warrants a new trial would create endless possibilities for frivolous claims that would wreak havoc upon the finality of judgments.

Some of the juror affidavits alleged that Appellant had winked and smiled in a flirtatious manner at some of the female jurors. Appellant's argument that these incidents resulted in prejudicial bias fails for the same reasons as the previously discussed incident. Furthermore, Appellant could not obtain relief from any prejudice resulting from his own improper behavior during trial. *Ex Parte Frazier,* 758 So.2d 611, 614 (Ala.1999) (defendant threw pen at jury and called them "motherf—— white jurors"); *State v. Linkous,* 177 W.Va. 621, 355 S.E.2d 410, 413 (1987) (jurors saw defendant in a scuffle with officers at trial: "It appears to be rather

uniformly held that misconduct or disruptive behavior on the part of a defendant during the course of a criminal trial will not establish grounds for obtaining a mistrial.").

## IV. CONTACTS BETWEEN JUDGE AND JURORS.

■ Some of the juror affidavits alleged that the trial judge met with the alternate jurors after they had been dismissed to learn their feelings about the case; and that he met with the trial jurors after they had been discharged from their duties at the conclusion of the penalty phase and that he had told these jurors that they had "done the right thing." To further convince them, he divulged evidence that had been excluded at trial, *i.e.,* that Ora Lee Isaacs, Appellant's former wife,[5] would have testified that Appellant returned home after one of the robberies with money and a gun, and that Appellant had physically abused her. Appellant claims that the prosecutor, despite the no-contact order, was present at those meetings, and that all of these circumstances resulted in a denial of due process and fair sentencing.

We first dispense with Appellant's arguments concerning the three alternate jurors. The meeting took place in the judge's chambers after the remaining jurors had begun their deliberations. One alternate juror's affidavit stated that she could not remember the substance of the conversation but did remember asking the judge why she had been removed from the jury. Another stated that she told the judge that she thought the evidence was insufficient to support a conviction. The third stated that she had doubts about the

---

**5.** Presumably, this evidence was excluded at trial because of the husband-wife privilege.

KRE 504(b).

case because there was no eyewitness testimony.

Criminal defendants are guaranteed the right to be present at "critical stages" of the trial. RCr 8.28(1). However, this meeting between the judge and the alternate jurors was not any "stage" of the trial, much less a "critical stage." Because the alternate jurors had already been dismissed, they no longer had the power to influence the outcome of the proceedings. And based on their affidavits, it is clear that none of these jurors told the trial judge anything that would have influenced his decision to impose a harsher penalty. Thus, the *ex parte* meeting did not result in prejudice to Appellant. *Washington v. United States,* 291 F.Supp.2d 418, 440–41 (W.D.Va.2003).

The same result obtains with respect to the trial judge's post-trial meeting with the jurors who had participated in deliberations. Since the jurors had been discharged from jury service when the meeting occurred, the trial judge's comments could not have prejudiced the jurors against Appellant. Rather, Appellant argues that (1) the trial judge's statement that the jurors "did the right thing," which he made before final sentencing, indicates that he had prejudged Appellant's sentencing and thereby deprived Appellant of a fair sentencing hearing; (2) at sentencing, the trial court improperly considered suppressed evidence proffered by Isaacs, which was never subject to cross-examination; and (3) the prosecutor gained an unfair litigation advantage over Appellant because of his presence at these *ex parte* meetings.

With respect to the first argument, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). This Court has previously considered a juror's testimony that a trial judge told a jury that it did "the right thing" by returning a recommendation for death, and we concluded that this purported evidence of the trial judge's bias was "woefully insufficient" to set aside the defendant's sentence. *Taylor v. Commonwealth,* Ky., 63 S.W.3d 151, 166 (2001), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1371, 158 L.Ed.2d 177 (2004). *See also United States v. Beard,* 960 F.2d 965, 970 (11th Cir.1992) (trial judge's negative personal opinion of the defendant, stated to the jury after the verdict was returned, did not "stray from neutrality"); *United States v. Battle,* 235 F.Supp.2d 1301, 1348 (N.D.Ga.2001) (alleged post-trial contact between judge and jury in which judge told jury that it had made the right decision was "unwise, but not reflective of bias against the Defendant"). In the case *sub judice,* where there is no other evidence of personal bias on the part of the trial judge, his mere comment to several jurors that they had done the right thing did not reflect bias such to *per se* deny Appellant a fair sentencing.

The essence of Appellant's second argument is that by citing the excluded evidence in his conversation with the trial jurors, the trial judge revealed that he credited it as reliable and thus considered it in sentencing Appellant to death. Citing *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), Appellant contends that he was denied due process of law because the trial judge imposed the death sentence based in part on evidence that Appellant had no opportunity to

cross-examine or explain. *See id.* at 362, 97 S.Ct. at 1207. We disagree.

■ The judge in *Gardner* explicitly disclosed that he relied on information not revealed to the defendant in reaching his sentencing decision. *Id.* at 351, 97 S.Ct. at 1201. In contrast, before sentencing Appellant, the trial judge in this case stated that he would "just rely upon [his] recollections of the evidence in the case . . . ." In sentencing Appellant for the non-capital offenses, the trial judge considered no additional information except for the presentence report prepared by Appellant's probation officer. "Trial judges are presumed to know the law and to apply it in making their decisions." *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990), *overruled on other grounds by Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This presumption applies as well to the evidence relied upon by a trial judge in reaching his sentencing determination. As there was no indication in the record that the trial judge considered any evidence that Appellant did not have the opportunity to confront or explain, there was no due process violation. *Paradis v. Arave,* 20 F.3d 950, 956–57 (9th Cir.1994).

■ Finally, Appellant argues that the prosecutor's presence at the trial judge's meeting with the excused jurors gave the Commonwealth an unfair litigation advantage, by exposing the prosecutor to the judge's opinion of both the jury's verdict and the reliability of Isaacs's excluded testimony. This claim is also meritless. *Cf. United States v. Gagnon,* 470 U.S. 522, 526, 105 S.Ct. 1482, 1484, 84 L.Ed.2d 486 (1985) (Appellant "has no constitutional right to be present at every interaction between a judge and . . . juror"). There is "a due process right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge . . . . [T]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.' " *Id.* (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 105–06, 108, 54 S.Ct. 330, 332–33, 78 L.Ed. 674 (1934)).

While such post-trial meetings between judge, juror, and prosecutor should be avoided to minimize any appearance of impropriety, Appellant has failed to show that his absence from this meeting thwarted a fair and just sentencing. If the trial judge had indeed formed a preliminary opinion as to the merits of the jury's sentence recommendation before the formal sentencing proceedings occurred, Appellant has not demonstrated that the prosecutor's knowledge of the judge's supposed opinion would have changed the arguments presented at formal sentencing. Additionally, since the trial judge did not consider Isaacs's evidence in setting the sentence, his opinion of the testimony was of no benefit to the prosecutor or consequence to Appellant. Thus, the prosecutor's presence during the trial judge's meeting with the former jurors was harmless beyond a reasonable doubt.

Accordingly, the Laurel Circuit Court's order denying Appellant's motion for a new trial is AFFIRMED.

GRAVES, JOHNSTONE, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., not sitting.