NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0585n.06
Filed: August 14, 2007

Case No. 03-5681

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONNIE LEE BOWLING, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| GLENN HAEBERLINE, Warden, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: MERRITT, BATCHELDER, and COOK, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Ronnie Lee Bowling appeals from the District

Court for the Eastern District of Kentucky, which dismissed his petition for writ of habeas corpus.

We reverse.

**I.**

On March 17, 1989, the Laurel County, Kentucky, grand jury returned a six-count indictment

against Bowling, charging him with the murder of Ronald Smith, burglary and robbery of the Jones

Chevron Station, the murder of Marvin Hensley, and burglary and robbery of the Hensely Spur

Station. A Laurel County jury convicted Bowling on all six counts, and the court sentenced him to

death on the two counts of murder and to twenty-year terms on each count of robbery and burglary.

On April 24, 1997, the Kentucky Supreme Court affirmed the convictions on direct appeal.

*Bowling v. Kentucky*, 942 S.W.2d 293 (Ky. 1997) (rehearing denied June 19, 1997), *cert. denied* 522

U.S. 986 (November 17, 1997). The AEDPA statute of limitations began running on November 18, 1997. Bowling had raised 44 assignments of error and 27 sub-issues. The court concluded: "In this opinion we have reviewed each of the issues presented by the appellant and conclude that there was no error of sufficient gravity to warrant reversal of his convictions." *Id*. at 308.

Bowling filed a motion for post conviction relief pursuant to Ky. R. Cr. 11.42, on June 22, 1998. This motion tolled the AEDPA statute of limitations with 216 days of that limitations period having already expired. On March 21, 2002, the Kentucky Supreme Court affirmed the Laurel County Circuit Court's denial of Bowling's motion. *Bowling v. Kentucky*, 80 S.W.3d 405 (Ky. 2002) (rehearing denied August 22, 2002), *cert. denied* 538 U.S. 931 (March 24, 2003). The United States Supreme Court denied *certiorari* on March 25, 2003, and on that date, the AEDPA statute of limitations period began to run again.

On November 20, 2002, while the AEDPA statute of limitations was still tolled, Bowling filed a motion for a new trial under Ky. R. Cr. 10.02 and a motion for relief from judgment under Ky. Civ. R. 60.02.[1] Meanwhile, while that motion was pending in state court, Bowling filed a first petition for writ of habeas corpus in the Eastern District of Kentucky on January 13, 2003. The district court dismissed the petition without prejudice on February 14, 2003. Bowling filed a motion to alter or amend judgment pursuant to Fed. R. Civ. Pro. 59(e), which the court construed as a motion to reconsider. The district court denied the motion on April 23, 2003.

Bowling appealed to this court on May 23, 2003, from both the February 14, 2003, and the

---

[1]On November 18, 2004, the Kentucky Supreme Court affirmed the Laurel County Circuit Court's denial of Bowling's R. Cr. 10.02 and Civ. R. 60.02 motions. *Bowling v. Kentucky*, 168 S.W.3d 2 (Ky. 2004) (rehearing denied August 25, 2005), *cert. denied* 126 S.Ct. 1171 (January 23, 2006). The court concluded that Bowling failed to show good cause for filing untimely. *Id*. Because it was untimely, this motion did not toll the AEDPA limitations period.

April 23, 2003, orders. On June 12, 2003, the district court issued a certificate of appealability, stating: "The issue that is so certified is whether this Court properly dismissed, without prejudice, the Appellant's petition." Bowling's AEDPA limitations period expired on August 20, 2003.

**II.**

The district court dismissed Bowling's habeas petition *sua sponte* and without notice because Bowling had pending a state court action against the same judgment of conviction he challenged in his federal habeas petition. Believing that "judgment" and "claim" are the same thing, the court surmised that Bowling's state court action rendered his federal claims unexhausted and his habeas petition therefore premature, and left Bowling with a choice between *either* the state *or* the federal claims, i.e., Bowling must dismiss the federal petition and pursue the state claims, or else, pursue the federal petition by forfeiting any other state claims. The district court also concluded that the state court action would toll the AEDPA statute of limitations because, in its view, *Austin* was no longer the law. The district court erred in several respects.

**A.**

"[D]istrict courts are permitted, but not obliged, to consider, *sua sponte*, the timeliness of a state prisoner's habeas petition." *Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 1684 (2006) ("statute of limitations advances the same concerns as those advanced by the doctrines of exhaustion and procedural default, and must be treated the same"). "Of course, before acting on its own initiative, a court must accord the parties fair notice and an opportunity to present their positions." *Id*. The district court erred by dismissing the petition *sua sponte* and without notice.

**B.**

In the context of federal habeas corpus law, a "judgment" means a judgment of conviction,

3

28 U.S.C.§2254(a) ("a person in custody pursuant to the judgment of a State court"), while a "claim" means a "claim of constitutional error" in that judgment, *Rose v. Lundy*, 455 U.S. 509, 519 (1982). As the complex web of habeas rules and court decisions demonstrates, a petitioner is often imprisoned on a single judgment but just as often raises numerous claims of constitutional error to challenge that judgment. A court must evaluate a habeas petition on the status of its included claims.

*Unexhausted claims*. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

*Mixed petitions - both exhausted and unexhausted claims*. "[A] district court must dismiss such 'mixed petitions,' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Lundy*, 455 U.S. at 510. *But see Jones v. Parke*, 734 F.2d 1142, 1145 (6th Cir. 1984) (distinguishing a plaintiff's attempt to raise additional claims); *Butler v. Rose*, 686 F.2d 1163, 1167 (6th Cir. 1982) (distinguishing a court's *sua sponte* assertion of additional claims).

*Exhausted claims*. A "court is entitled to delay decision [] when considerations of comity and judicial economy would be served. However, something more than related claims pending in state court is needed before the court may dismiss a fully-exhausted petition outright. Such dismissal has always been difficult to square with the court's obligation to exercise the jurisdiction given it by Congress." *Nowaczyk v. Warden, N.H. State Prison*, 299 F.3d 69, 83 (1st Cir. 2002).

4

Bowling's federal habeas petition contained only claims that had been fully exhausted in state court. The fact that he had an independent proceeding pending in state court did not render his federal petition a mixed petition. Because *Lundy* applies to mixed petitions, not to petitions containing only fully exhausted claims, the court's reliance on *Lundy* was improper. The court erred by dismissing the petition and refusing to accept its duly authorized jurisdiction.

### C.

*Rose v. Lundy*, 455 U.S. at 510, requires a petitioner who has filed a mixed petition — i.e., a petition containing both exhausted and unexhausted claims — to choose between delaying the federal petition until he has exhausted the unexhausted claims in state court, and pursuing only the exhausted claims in the first federal petition (i.e., dismissing the unexhausted claims from that petition); it does *not* require that the petitioner forfeit pursuit of any unexhausted claims in state court in order to proceed on a first federal petition containing only distinct and fully exhausted claims.

In fact, *Lundy* anticipates that a petitioner might dismiss unexhausted claims from his first federal petition, proceed on his first federal petition while concurrently exhausting his unexhausted claims in state court, and then return to federal court with a subsequent petition containing the claims that had just been exhausted in state court. The dispute among the several writing justices in *Lundy* was over the treatment of such a subsequent petition. The plurality explained:

> [A petitioner] can always amend the petition to delete the unexhausted claims, rather than returning to state court to exhaust all of his claims. By invoking this procedure, however, the prisoner would *risk* forfeiting consideration of his unexhausted claims in federal court [because] a district court may dismiss subsequent petitions if it finds that the failure of the petitioner to assert those new grounds in a prior petition constituted an abuse of the writ.
>
> . . .
>
> Thus a prisoner who decides to proceed only with his exhausted claims and

deliberately *sets aside* his unexhausted claims *risks* dismissal of subsequent federal petitions.

*Id*. at 520-21 (plurality) (citations, quotation marks, and edits omitted; emphasis added). To "set aside" is not to "forfeit," and "subsequent federal petitions" could only arise after the petitioner has finally exhausted those other claims in state court. It is evident from any perspective in the *Lundy* opinion that the Court expected petitioners to pursue the unexhausted claims in state court and eventually return to federal court in an attempt to pursue those claims. Another example:

> [In the first instance, the] trial judge cannot rule on the unexhausted issues and should dismiss them. But he should rule on the exhausted claims unless they are intertwined with those he must dismiss or unless the habeas petitioner prefers to have his entire petition dismissed. In any event, if the judge rules on those issues that are ripe and dismisses those that are not, I would not tax the petitioner with abuse of the writ *if he returns with the latter claims after seeking state relief*.

*Id.* at 538 (White, J., concurring in part and dissenting in part) (emphasis added).

The district court dismissed Bowling's petition, requiring that he not seek federal habeas relief until he had either finished every conceivable state court challenge or voluntarily forfeited any further state court challenges. *Lundy* does not require a petitioner to forfeit all other claims and the district court erred in asserting that it does. We do not opine, though, on whether Bowling would abuse the writ if he ever does bring his current state-court claims to federal court in a successive petition.

**D.**

Beginning December 28, 1999, the Sixth Circuit rule had been that "a state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question . . . does not toll the one-year AEDPA statute of limitations." *Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir. 1999) (*overruled* on Aug. 19, 2004). Bowling's earlier state

collateral review (unrecognized by the district court) expired on March 25, 2003, when the Supreme Court denied *certiorari*. The pending state collateral review proceeding, the one filed on November 20, 2002, did not address any of the grounds in the federal habeas petition. Based on *Austin*, Bowling's AEDPA limitations period was counting down. Therefore, Bowling had a reasonable apprehension that the statute of limitations for federal review of these claims would expire.

Contrary to the district court's view, *Austin* was viable and remained viable until August 19, 2004, almost 16 months after the court's ruling. *See Cowherd v. Million*, 380 F.3d 909, (6th Cir. 2004) (en banc) (overruling *Austin*). As this Court has since explained:

> Because *Austin* implied that state post-conviction proceedings on [a petitioner's unexhausted] claims would not toll AEDPA's statute of limitation as it applied to his already exhausted claims, [the petitioner] had no recourse but to file his exhausted claims for federal habeas review before exhausting his remaining claims, as it had been nearly one year since he had exhausted his state remedies with regard to those claims.

*In re Bowen*, 436 F.3d 699, 703 (6th Cir. 2006).

> Had *Austin* not been the law, [the petitioner] would have been required either to exhaust all of his claims before filing his first habeas petition in order to bring all his exhausted claims at once, or submit all his claims within one year of direct appeal, understanding that his unexhausted [] claim would result in the dismissal of his petition as mixed. However, given the state of the law in this circuit when [the petitioner]'s petition was considered, [the petitioner] was unable to pursue either avenue. Under *Austin*, he risked losing federal review of his exhausted claims due to AEDPA's statute of limitation if he took either approach. Given *Austin*, if the district court had dismissed his mixed petition, the AEDPA statute of limitation would have tolled on his exhausted claims, potentially foreclosing review of those claims.

*Id*. at 705. "[A] court is to apply the law in effect at the time it renders its decision." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 264 (1994). The district court erred by refusing to follow this Court's holding in *Austin* and dismissing Bowling's properly filed petition.

7

**E.**

*Younger* abstention prevents a federal court from interfering (e.g., issuing an injunction or granting declaratory relief) with an ongoing state proceeding, except in cases of bad faith or harassment. *Younger v. Harris*, 401 U.S. 37, 50 (1971). The district court relied on *Younger* to dismiss the petition "[b]ecause there are currently ongoing state court proceedings and because those proceedings apparently are regarding matters that have also concurrently been brought before this Court." But, the matters before the district court were not directly implicated by the on-going state court proceedings. There was no risk that the federal court would interfere with the state proceeding. This was not a case in which "the State's interests in the proceeding [was] so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987). Therefore, the district court erred by relying on *Younger* abstention in this situation.

**III.**

Based on the foregoing, we **REVERSE** the decision of the district court, **REINSTATE** the petition, and **REMAND** for further proceedings.

MERRITT, Circuit Judge, concurring. We spend much more time now in habeas cases like this one discussing arcane, inscrutable points than getting to the real questions that should take up our time. This is a case in which the District Court became confused about how to apply a series of legal devices designed to close the door to reviewing constitutional claims on the merits in habeas cases pending partially in state court and partially in federal court. It is no wonder because the law is a morass of inconsistent, intersecting doctrines; but I agree with Judge Batchelder's opinion that the District Court erred seriously in its effort to avoid deciding the constitutional questions on the merits.