Judge Buckner
delivered the opinion of the court.
Johnson instituted an action of covenant againat Davenport, upon a writing usually called a bill of sale, in which Davenport warranted that a slave which he had sold to the plaintiff, on the 4th of September, 1824', was sound; but which plaintiff" alleged to have been laboring, on the date of the execution of the-covenant, under an incurable malady, denominated the Cachexia Africana, of which he died in the November next thereafter. The defendant relied upon the plea of covenants performed, and obtained a verdict and judgment in his favor; to reverse w.hich, the plaintiff prosecutes this writ of. error.
The error relied on as cause of reversal is, that the circuit court improperly refused to grant a new trial, upon Johnson’s motion, for the reasons stated .in the record, to-wit:
1st. That “the verdict was against law and evidence.”
2d. That “there waá, in truth, no verdict, and that Christopher Green, one of the jury, never did agree to the same, but objected and refused to the last, to. find for the defendant.”
We shall not attempt to state-the evidence, which, asset forth in the bill of exceptions,occupies twenty six or seven pages. It is sufficient to remark, that although on the part of the plaintiff, it was very strong, there was, on that of the defendant also,, strong countervailing testimony; and although we are inclined to the opinion,, that the weight in the scale of the plaintiff, preponderated,, yet the jury, who were the constitutional triers of the matter, came to a different conclusion; in which they were supported by the opinion of the judge, who presided on the trial, A proper respect is due to the opinions of the juYy and- of the judge, before whom a cause is tried; but in no instance does the remark apply with snore force, thandn a case like this; where the sound? *391 ness or unsoundness of the slave was the subject of inquiry. It was a matter in itself, absolutely unsus-ceptible of any unerring and entirely satisfactory proof. The diseases which afflict mankind, and destroy life, are so various, and often so complicated, their symptoms and progress so different, in different constitutions, and under variant circumstances, that U is not at all surprising that physicians of the most acknowledged skill and experience, should sometimes entertain contrary opinions even as to their nature, but. more especially as to their exciting causes, and the periods of their commencements. An example was furnished in the trial of this very case.
Verdict should not be cep fin case* of clear and Arrant in-when^’re-ponderenee of evidence is that^'incT rests with unwavering Verdict never dence is nearly equipoised’,
The covenant bears date on the 4th of September, and it was some time in November, before any one of the physicians, who were introduced as witnesses, saw or examined the slave. The existence of disease, therefore, at the date of the covenant, of which all, except one, expressed great confidence, was but matter of opinion, entitled, to be sure, to high respect, (for each one is to be most trusted in his own ■art,) but still, by no means entirely satisfactory.
A verdict rendered against the weight of evidence, may be set aside by a court. Some examples occur, in which, it is very proper to do so, on that ground, When, however, the matter decided, is susceptible of the most palpable demonstration, such a power should be delicately and cautiously exercised. It should be in a case of clear and flagrant injustice; when, the preponderance is decisive, and upon which the mind may rest with unwavering confidence; but never, when the evidence is nearly equipoised. But in a case like this, which turned, not upon the exist-enceof a disease in November, when those, whose opinions were most to be regarded, made an examination of the slave,' but the 4th of (he preceding tember, a time, about which, many witnesses saw him, most of whom, represented him as then exhibiting appearances of health and sprightliness, it would be highly improper to interfere with the verdict. Although entertaining a very high respect for the faculty, we are not prepared to say that the value of iheir opinions of supposed existing facts, in the early *392 part of September, being but deductions or inferences, from appearances in November, (and especially as between them, there was not an entire accordance,) should be considered as so entirely superior to those of such persons, although professing no medical skill, as to be absolutely conclusive. Whether the jury decided as we think they ought to have decided, is not the question; but did they so far disregard the testimony, as to have made it the duty of the circuit judge, according to the principles here laid down, to grant a new trial? We cannot say that they did. Those principles, we conceive to be in strict accordance with the uninterrupted tenor of the decisions of this court, in cases of motions for new trials, on the ground that the verdict was against evidence.
The second point presents a more perplexing question. C. Green, one of the jury, gave his affidavit, sworn to in,open court, in which he states, “that he was opposed and objected to finding a verdict for the' defendant, believing the negro diseased, at the time of the sale; that he made known his objections and refusal to finding for the defendant, to the rest of the jury; that he continued to be so opposed and to refuse to find for the defendant, and did not agree or consent thereto, as his verdict, but viewed and considered it, as it was in fact, the verdict of the balance of the jury; that he did not agree to make it his verdict, but ■went in with the jury, when the verdict was given, and did not think himself required to make any objection, unless he had been called on, which was not done. If his name had been called and he asked whether he agreed to the verdict, he should have answered, No; for he never consented thereto. He did not hear any inquiry by the court, or the clerk, calling for his opinion, as to the verdict, or of his consenting or dissenting thereto, and consequently said nothing.
The affidavits of seven others of the jury, are also exhibited in the bill of exceptions. They are substantially if not literally alike. The following is a copy of one of them:
“This affiant states that he was one of the jury in the .case above named, tried at the present term of *393 Uie Jessamine circuit court, and Christopher Green, also one of' the jury, strongly objected to find for the ’defendant, while the rest were making up the and never did agree to the same, as his verdict, but dissented thereto. April 27th. 1828.”
Testimony ot one of jurors, mis'c'onduc'uf jury as will invalidate parity of their motives, orto which influenced them, withview to dmt^inadmi's-«Me!
The plaintiff’s affidavit was also filed, in which he states that he would have procured the affidavits of the remaining jurors, who he was informed and believed, would swear as the others had done, but that they lived in remote parts of the county, and he had not time to get them.
Tile counsel for the plaintiff offered to have the said seven jurors examined in open court, which the court would not permit.
The record exhibits a regular verdict and judgment thereon, for the defendant, and whether that can be set aside by the testimony of some of the jurors, that one of them did not agree to the verdict, is the point to be decided.
That the testimony of one or more of the jurors, to prove such misconduct of the jury as would invalidate their verdict, or to question the purity of the motives by which they had been influenced in render-ingit, or to explain the ground, either of law or fact, which influenced them, with a view to impeach the verdict which they had returned, is inadmissible, according to the whole current of modern decisions, is inadmissible. Such testimony has been rejected, not only by this court, but by those of sister states. See Chiggage’s lessee vs. Swann, IV. Binney’s Penn, Repts. 150; Danna vs. Tucker, IV. Johnson, 487; Price’s executors vs. Warren, administrator of Fuque, I. Hen. and Mun. 385; Taylor vs. Giger, Hardin, 587; Heath vs. Conway, I. Bibb, 398.
The dangerous tendency of receiving testimony of the jurors, for such a purpose, is too obvious to require comment. It would open a door sp wide, and present temptations so strong, for fraud, corruption and perjury, as greatly to impair the value of, if not eventually to destroy, this inestimable form of trial by jul7*
*394 It has been insisted, however, that the affidavits of the jurors in this case, were offered for no such purpose, but to show, that in truth, no verdict had been returned except by eleven of the jury, and that many precedents support the principle that the affidavits of jurors, for such a purpose, are admissible.
In delivering the opinion in the case of Taylor vs. Giger, the court said, “there is one class of cases, where the affidavits or the depositions of the jurors, have been received to impeach the verdict, by showing that there was, in truth, no-verdict; and that the jurors, or part of them, never did consent to it, as rendered. They cite the case ot Cochran vs. Street, I. Wash. Rep. 79, and refer to the principle as decided in several other cases, but do not name them. In that case, four of the jury men declared on oath, that they were of opinion, upon the evidence, that no damages ought to have been given against Cochran; but that being unacquainted with the duties of jurymen, and the nature of their office, and being told by others, who were more experienced that they must agree in any verdict, which the majority should approve, they did not object to it.
The president of the court, in delivering their opinion, said, “To meddle with the verdict ot a jury upon tne evidence of some of the jurors, is a delicate business, and should be proceeded in, with caution, to prevent the mischief of the jury men being tampered with. Lord Mansfield, very properly, in the case, cited from Durnf. and East, refused a new trial upon the affidavit of two ot the jurors, that the cause was decided by “cross and pile, because, it went, not only to prove tnemselves guilty ot misconduct, but also ten others of the jury. But here, ten oi the jurors are examined, and eight of them agree in the tact, that part ol their body were opposed to giving any damages at all, and that the verdict was found on the opinion oí a majority.”
With due deference for that court, we must acknowledge, that we do uot perceive the distinction attempted to be drawn, unless it consists in the quan-turn of testimony in the one case, and the other. •In the one, two of the jurors swore, that the cause *395 had been decided by cross and pile; in the other four, stated, they were made to believe, that a majority should govern. By whom? Their affidavits do not state, but it was either by the other eight, or some of them, which, unless they were alike ignorant on that subject, which was not pretended, was an act of glar-ingirnpropriety, and even corruption; or they had permitted others, not of the jury, to tamper with, and mislead them. In either view, the opinion seems to be directly at war, with the well established doctrine, that whenever misbehaviour of thejury is relied upon, asa ground for new trial, the affidavits of the jurors, cannot be received. In the case of Cogan vs. Ebden and another, I. Burrow, 383, two distinct issues were joined, and the foreman gave in a general verdict for file defevdant. But eightof the jury made affidavit, that it was the meaning and intention of the whole jury to find one issue, for the defendant, and one for the plaintiff; that the mistake was discovered an hour afterwards, but not till the judge was gone to his lodgings. The foreman declined giving an affidavit, because he said ho should make himself apppear a fool, to the court of king’s bench.
Testimony of juror.- to invalidate ihoir verdirt, only admissible in cases of mistake, which do not subject jurv to anj imputation of impure motives or palpable impropriety of conduct. Ami in proof of such mistake, must be no ground to suspect that jury bavo been tampered with.
*395 The court considered it as a mistake, arising from the jury’s being unacquainted with such business; and from the associate’s omission, in not asking thejury particularly, how they found each respective issue, and in not making the jury fully understand their own finding; and said the mistake ought to he rectified. But between that case mid the present' there is an obvious difference. It is indeed very difficult to lay down any precise rule, the application of which, to each particular case, would be sufficient, to determine, whether the affidavits of the jurors, ought to be received to invalidate their,verdict.
It seems to be universally agreed, that If received at all, it should be with great caution; and we are of opinion, as far as our researches have extended, that their admissibility should be confined to cases of mistake, clearly made out, and which may be conceded as true, without subjecting the jury to any imputation of impure motives, or palpable impropriety of conduct; and in relation to the proof oí which mis *396 take by their affidavits, there should be no reasonable-ground for suspicion, that they might have been tampered with.
If, by testimony of jurors, it appear that one of jury never agreed to verdict, and remained si-tent on its return, thinking himself not required to object unless called on, no ground to set aside verdict; because, such testimony inconipe-tent.
Cunningham, for plaintiff; Marshall, for defendant*.
In the case now before us, the jury returned from their room into court, with a verdict for the defendant; not by mistake, for it is not pretended, that a single juror did not understand what they were about to do. There was but one issue; it involved but one point. They did not insert the word defendant, when they meant plaintiff. But one of the jury who it is said, had refused to consent to such a ver-djet, heard it. read, heard no doubt his name called, and the inquiry propounded, according to the universal practice, “so say you all,” and thereby tacitly assented to it, yet insists that it was the verdict, of his fellow jurors only.
To return a verdict under such circumstances, if he did not consent to it, was highly improper, and disreputable, both to him and to the other jurors, who knew of bis dissent, and only by concealing it, palmed a fraud upon the court, and the litigants.
Upon a view of the whole case, we are of opinion, that the court decided correctly, in overruling the motion for a new trial.
The judgment must be affirmed with costs.