Milton (Bus) COLE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. SC–103–MR.

Supreme Court of Kentucky.

July 1, 1977.

Jack Emory Farley, Public Defender, Mark A. Posnansky, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Michael R. Beiting, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Bus Cole appeals from a judgment sentencing him to 15 years and to life imprisonment respectively pursuant to a jury verdict finding him guilty of involuntary manslaughter in the first degree and of being a habitual criminal. The trial court directed that the sentences run concurrently. Cole is not satisfied with the result and prosecutes this appeal. It is noted that trial counsel and appellate counsel are not the same. Local attorneys represented Cole at trial; the public defender represents Cole in this appeal.

Cole raises seven issues on this appeal: (1) the indictment was defective; (2) the trial court coerced the jury to return a verdict; (3) the Commonwealth's Attorney improperly asked leading questions of the prosecution witnesses; (4) the jury, without knowledge or consent of Cole, was allowed to take a dictionary to the jury room during deliberations; (5) a witness for the prosecution was appointed bailiff to wait upon the jury after the case was submitted; (6) Cole was tried as a habitual criminal in a non-bifurcated trial; (7) the Commonwealth's Attorney should have recused himself because Cole was his former client. Cole asserts that for these reasons he was denied a fair trial.

So that the issues may be properly resolved, it is appropriate to recite briefly some of the pertinent facts.

On July 27, 1974, between 11:00 A.M. and noon, Cole and Lisa Dixon (sic) Dickerson, a neighbor girl three years of age, went in Cole's Cafe in Adairville, Kentucky. Charles Ray Spaulding, an uncle of Lisa's mother, and approximately eight other persons, were in the cafe. The evidence of those present although in sharp conflict, established that Cole took a .25 caliber automatic pistol from his pocket and pointed it at Spaulding's chest and face. He then handed the gun to Lisa and told her to

"shoot this nigger," or "shoot that son-of-a-bitch." Lisa held the gun in both hands, and pointed it at Spaulding. She did not pull the trigger. Cole then grabbed the pistol and tampered with it. He was in the process of handing the gun to Lisa when it discharged into Spaulding's chest. In two minutes or less, Spaulding was dead. After the shooting, Cole put the gun in his pocket and nonchalantly walked out of the cafe. A few minutes later he returned. Witnesses to the shooting testified that when Cole returned he said: "Don't blame Lisa, it wasn't her fault."

In his defense of accidental shooting and killing Spaulding, Cole testified that he gave the gun to Lisa. He denied telling her to shoot Spaulding. He didn't know the gun was loaded. He carried it in his tackle box to shoot snakes and wild foxes. He admitted that he had given the pistol to Lisa on other occasions. He did that so she could frighten those who teased her. He testified that Spaulding was a good friend. On a number of occasions when Spaulding was drunk, he cared for him, and was his benefactor in other ways.

Cole first argues that the indictment is defective. He asserts the body of the indictment lists one felony conviction on February 5, 1946. He insists there is no record in the indictment as to the principal charge for which he was tried or for the other prior felony conviction. The record reveals that when the prosecutor made an opening statement to the jury, he read the indictment which contained all the counts against Cole and for which he was tried. In preparing the transcript of record for this appeal, the clerk failed to include that portion of the indictment about which complaint is made. On April 20, 1977, this court by order granted the Commonwealth's motion to correct the transcript of record by adding a missing page. The tendered certified copy was ordered docketed on that date. Thus, all the fuss about the defective indictment is pure fiddle-faddle. The corrected indictment conforms to RCr 6.10 and *Willis v. Commonwealth*, Ky., 489 S.W.2d 823 (1973).

■ There is no merit in Cole's argument that the remarks of the trial court coerced the jury to return a verdict. The jury voluntarily returned to the jury room after the trial court clarified its instructions. It is true that after the jury had deliberated six hours, the foreman reported that the jury was hopelessly deadlocked. The trial court agreed but stated: "You realize this may make us have to go through another week of this." The foreman of the jury stated that would have no effect on the jury's deliberation.

*Burnam v. Commonwealth*, 283 Ky. 361, 141 S.W.2d 282 (1940) cited by Cole is distinguishable from this case. In *Burnam* the trial court ordered the jury to return to its deliberations. He threatened to keep the jurors sequestered for a week. In this case the jury volunteered to continue its deliberations. The trial court showed compassion for the jury's welfare. He asked the jury about providing a meal for the members of the jury. The trial court's remarks about another week was not directed at the jury trying Cole's case. Hence, there was no coercion by the trial court for the jury to return a verdict. Therefore, Cole was not prejudiced by the trial judge's remarks to an inquiring jury. *Boggs v. Commonwealth*, Ky., 424 S.W.2d 806 (1966).

■ Cole argues that he was prejudiced by the prosecution's leading questions. This court has read the entire transcript of the trial proceedings including all the evidence. Both the Commonwealth's Attorney, as well as counsel for Cole, elicited much irrelevant evidence from the numerous witnesses. There was, on some occasions, a tendency on the part of counsel for the Commonwealth and counsel for Cole to ask leading questions. The practice condemned by Cole is like the "pot calling the kettle black." However, the trial judge was in command of the trial ship. He ruled upon the objections with dispatch. He sustained an objection of Cole's attorney to a witness referring to a "bullet hole" in Spaulding's shirt and directed all references to that statement stricken. Other examples of "leading questions" about which Cole

complains involved information which had been elicited from the witnesses on direct examination. A question on redirect examination is not a leading question if the same information has been testified to by the witness on direct examination. *Apple v. Commonwealth*, Ky., 296 S.W.2d 717 (1956). The trial court's ruling will be reversed only where a "shocking miscarriage of justice" has occurred. Such has not been shown here. *Meredith v. Commonwealth*, 265 Ky. 380, 96 S.W.2d 1049 (1936).

■ There is a time and a place for all things. Permitting a jury to take a dictionary to the jury room is neither the time nor the place. The record reveals that the bailiff informed the trial court the jury had requested a dictionary. The trial court furnished the bailiff a dictionary. He took it to the jury. At a hearing on Cole's motion and grounds for a new trial, the bailiff testified that Cole's trial counsel was notified but had no objection. Cole's attorney asserted he had no knowledge of the matter until a member of the jury returned the dictionary to the trial court. At that time he objected. In the trial of a case the best practice is to allow jurors to examine matters not introduced in evidence in open court and then only by consent of counsel. *Watson's Executor v. Watson, Et Al.*, 137 Ky. 25, 121 S.W. 626 (1909).

■ Cole's complaint of prejudice is based on the belief that the jury used the dictionary definitions of "wanton act" and "wanton indifference" as a substitute for the definitions contained in the trial court's instructions. The record reveals that the dictionary was not an aid to the jury. The trial court in his Instruction Number Two (2) on involuntary manslaughter in the first degree defined a wanton act:

"The meaning of the words 'wanton act' as used in this instruction means a wrongful act done on purpose in complete disregard of the rights of others, with conscious knowledge of and complete disregard for the probable consequences."

At the request of the jury, the trial court clarified "wanton act" and "wanton indifference" to the satisfaction of the jury. He explained the definition of "wanton act" in the second paragraph as referring to the same thing as the defendant's "wanton indifference" in the first paragraph of the instruction. With the clarification, the jury expressed a desire to try to arrive at a verdict. The colloquy between the trial court and the jury's foreman occurred after the jury had returned the dictionary. Thus, Cole was not prejudiced by the jury's possession of the dictionary. Therefore, the error, if any, in providing the jury a dictionary was harmless.

■ Cole's next assignment of error is that a state trooper who assisted in the investigation of the homicide, and testified as a witness, was appointed bailiff to guard and wait upon the jury. He contends he was denied fundamental fairness at trial by this action. Cole's trial counsel made no objection to the trial court's appointment of the state trooper as bailiff. Thus, there was no error. The trial court had no opportunity to rule on the question because it was not brought to his attention.

■ Complaint is made that the bailiff was not sworn pursuant to RCr 9.68 to keep the jury together and to protect the members from outside communications. It is noted that the trooper acting as bailiff was sworn to guard the jury when the trial court directed it to view Cole's cafe prior to the introduction of evidence. It is not reversible error in failing to administer the oath to the officer having charge of the jury where that officer actually performs his duties. *Mason v. Commonwealth*, Ky. App., 463 S.W.2d 930 (1971). Because the state trooper as bailiff properly performed his duties, there was no error. RCr 9.68.

■ Cole's argument that the trial court should have held a bifurcated trial is totally without merit. This court has persistently refused to hold that the non-bifurcated trial procedure denies habitual criminals due process of law. See *Wilson v. Commonwealth*, Ky., 476 S.W.2d 622 (1971).

■ The enactment of the Penal Code is not applicable in this case. Cole was indict-

ed for the offenses of murder, a violation of KRS 435.010; and habitual criminal, a violation of KRS 431.090. The indictment was returned October 21, 1974. He was convicted of the lesser degree of involuntary manslaughter in the first degree, and of being a habitual criminal. The Penal Code is not retroactive, and therefore has no relevance for purposes of this appeal.

◼︎ Cole challenges the trial court's instructions to the jury. He contends that the instructions submitted by the trial court are insufficient to reduce the prejudicial effect of the evidence of his prior felony convictions. He asserts that his tendered instructions were improperly denied. This court notes that Cole's proposed instructions are almost identical to the instructions given by the trial court. Hence Cole's argument about the instructions is spurious.

◼︎ Finally, Cole contends that the Commonwealth's Attorney should have been disqualified from the case because of his representation of Cole at his 1946 conviction. He argues that this is a conflict of interest which denied him his due process right to a fair trial. A prosecuting attorney is disqualified from acting in a criminal case only if he has previously represented or been consulted professionally by the accused with respect to the same offense charged or in matters so closely interwoven as to be in effect a part thereof.

◼︎ The Commonwealth's Attorney acquired no confidential information when he defended Cole 29 years previous to this trial which he could have used in the case at bar. The existence of the prior conviction of Cole for the habitual criminal offense was established by the testimony of the clerk of the Logan Circuit Court. It was a matter of public record. Thus, there was no conflict of interest so as to disqualify the Commonwealth's Attorney.

This court is not willing to substitute its judgment for that of the jury that tried this case. The jury heard many witnesses. It was properly instructed upon the law of the case. Under the evidence presented in this case, the jury could have found Cole guilty of murder. He should be content that it did not so find.

The judgment is affirmed.

All concur.