COMMONWEALTH of Kentucky, Appellant,

v.

Chris WOOD, Appellee.

No. 2006–CA–000854–MR.

Court of Appeals of Kentucky.

June 22, 2007.

Gregory D. Stumbo, Attorney General of Kentucky, James Havey, Assistant Attorney General, Frankfort, KY, for appellant.

Angela J. Johnson, Assistant Public Advocate, Frankfort, KY, for appellee.

Before STUMBO and VANMETER, Judges; PAISLEY,[1] Senior Judge.

*OPINION*

VANMETER, Judge.

The Commonwealth of Kentucky appeals from the Garrard Circuit Court's order granting Wood relief pursuant to RCr[2] 11.42. For the following reasons, we affirm.

On direct appeal, we affirmed the trial court's judgment sentencing Wood to ten years' imprisonment for first-degree rape. *Wood v. Commonwealth,* No.2003–CA–000722–MR, 2004 WL 1232559 (Ky.App. June 4, 2004). Thereafter, Wood moved for relief pursuant to RCr 11.42, alleging juror misconduct and ineffective assistance of counsel. After an evidentiary hearing on the matter, the trial court found that the jurors consulted a dictionary during their deliberations for the definition of the word "rape," and that Wood's counsel was ineffective by failing to impeach a witness. The trial court accordingly granted Wood's motion for relief pursuant to RCr 11.42 and vacated its previous judgment of conviction. This appeal followed.

■ First, the Commonwealth argues that the trial court erred by hearing and relying upon a juror's testimony in granting Wood relief pursuant to RCr 11.42. We disagree.

RCr 10.04 provides that "[a] juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made by lot." Under this rule, "evidence of another juror as to anything that occurred in the jury room" is simply incompetent to impeach the jury's verdict. *Hicks v. Commonwealth,* 670 S.W.2d 837, 839 (Ky.1984). Wood argues, however, that this rule is unconstitutional. Indeed, the Kentucky Supreme Court has twice recognized that in *Doan v. Brigano,* 237 F.3d 722 (6th Cir.2001), *abrogated on other grounds as recognized by Maples v. Stegall,* 340 F.3d 433 (6th Cir.2003), the Sixth Circuit Court of Appeals declared unconstitutional an Ohio rule which is similar to our RCr 10.04. *See Brown v. Commonwealth,* 174 S.W.3d 421, 429 (Ky.2005); *Bowling v. Commonwealth,* 168 S.W.3d 2, 7 (Ky.2004).

In *Doan,* a juror "conducted an experiment in her own home during the trial" to determine the truth or falsity of the defendant's testimony that "he did not see any of [a baby's] bruises on the evening of her death because the bathroom and the adjoining rooms were so dark[.]" 237 F.3d at 726–27. During the jury's deliberations, the juror relayed to the other jury members her findings that one could indeed see bruises in such lighting. 237 F.3d at 727.[3] Under the applicable Ohio evidentiary rule, only "independent evidence from a source with firsthand knowledge other than the jurors themselves" could be admitted "as to an extraneous influence that was brought to the jury's attention during the trial or deliberations[.]" 237 F.3d at 730. The Sixth Circuit held that such evidence rule,

> by denying the Ohio courts the ability to consider evidence of the jury misconduct in this case, denied Doan's right to con-

---

1. Senior Judge Lewis G. Paisley sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. Kentucky Rules of Criminal Procedure.

3. During deliberations, the juror also looked up the definitions of "purposeful" and "intent" in a dictionary; however, the Sixth Circuit did not address that issue since the juror did not relay her findings to the other jurors. 237 F.3d at 732 n. 6.

front the witnesses and the evidence against him, and thus clearly stands in conflict with Supreme Court precedent recognizing the fundamental importance of this constitutional right.

237 F.3d at 732.

Further, construing the Supreme Court's decision in *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), the Sixth Circuit delineated between those jury matters that can, and those that cannot, be used to set aside a jury verdict:

[In *Mattox*, the Supreme Court] held that a matter "resting in the personal consciousness of one juror" may not be used to upset a jury's verdict "because, being personal, it is not accessible to other testimony." [*Mattox*, 146 U.S.] at 148, 13 S.Ct. 50, 36 L.Ed. 917. The Court stated that it would not give the "secret thought[s] of one [juror] the power to disturb the expressed conclusions of twelve." *Id.* In sharp contrast to the secret thoughts of jurors, the Court held that juror testimony as to "overt acts" of misconduct can be considered because the remaining members of the jury can testify as to whether or not those acts of misconduct actually occurred. *Id.* at 148–49, 13 S.Ct. 50. The Court recognized that, by drawing this distinction, verifiable evidence of a jury's consideration of extraneous prejudicial information could be considered by courts while still respecting the finality of jury verdicts by disallowing testimony as to the unverifiable thoughts of jurors. *See id.* at 148–49, 13 S.Ct. 50.

Thus, the Supreme Court in *Mattox* held that, when addressing a motion for a new trial, courts should consider juror testimony concerning any overt acts of misconduct by which extraneous and potentially prejudicial information is presented to the jury, including juror testi-

mony showing that a newspaper article relevant to the case was read aloud in the jury room.

237 F.3d at 732–33 (internal footnote omitted).

In *Brown*, the Kentucky Supreme Court found that the facts before it were distinguishable from *Doan*, as although the juror's affidavit indicated that "a juror had heard elsewhere about a matter that was also mentioned during the trial testimony[,]" there was no evidence of outside influence. 174 S.W.3d at 429. Further, in *Bowling*, a juror told a Department of Public Advocacy investigator that he believed the defendant had to prove he was innocent in order for the jury to reach a not guilty verdict. 168 S.W.3d at 7. The Kentucky Supreme Court determined that prohibiting such testimony was consistent with *Doan*, apparently because the evidence fell into the category of a juror's "secret thoughts" about which testimony could not be heard.

Here, by contrast, it is clear that the jury's use of a dictionary falls into the other category described in *Doan*, *i.e.*, it is an "overt act" about which a court may receive testimony in order to ensure a defendant is given a fair trial. Under such circumstances below, the trial court did not err by hearing the juror's testimony about the alleged misconduct.

■■■ As to the merits of the juror's testimony regarding the alleged misconduct, Kentucky courts have recognized that "[t]here is a time and a place for all things. Permitting a jury to take a dictionary to the jury room is neither the time nor the place." *Cole v. Commonwealth*, 553 S.W.2d 468, 471 (Ky.1977). Nevertheless, a jury's use of a dictionary in the jury room is not reversible error *per se.* Rather, a defendant must show that he was prejudiced by the conduct. *Id.* at 471

(harmless error in providing jury with a dictionary as no prejudice resulted to defendant).

In this matter, Wood clearly was prejudiced by the juror misconduct. The jury foreperson testified that during deliberations, the jurors were confused as to the "description" of rape, specifically as to whether it required penetration. So the jurors would be on the same "platform," they consulted a dictionary for the definition of "rape" and found that according to such definition, rape could occur without ejaculation or penetration. It is clear, however, that penetration is a required element in each of Kentucky's rape offenses. *See* KRS 510.040—510.060; KRS 510.010(8). Since the jury here was instructed not only as to first-degree rape, but also as to first-degree sexual assault which only requires "sexual contact" and thus no'penetration, it is clear that Wood's substantial rights were prejudiced, *Commonwealth v. Campbell,* 415 S.W.2d 614, 616 (Ky.1967), by the jury's use of a dictionary. Thus, the trial court did not err by granting him relief pursuant to RCr 11.42.

We note that Wood's allegations of juror misconduct have not been raised in the context of ineffective assistance of counsel as neither the parties nor the court were aware of the alleged misconduct until some time after Wood's jury trial. Indeed, Wood's counsel informed the court at the RCr 11.42 evidentiary hearing that she had not been in contact with the jury foreperson until June or July of 2005, over two years after Wood's trial. Rather, the juror misconduct is a trial irregularity which rises to the level of a constitutional violation, *see Lay v. Commonwealth,* 506 S.W.2d 507, 508 (Ky.1974) ("under RCr 11.42 the movant must show that there has been a violation of a constitutional right, a lack of jurisdiction, or such a violation of a statute as to make the judgment void and therefore subject to collateral attack"). Further, since we have found that the trial court did not err by granting Wood RCr 11.42 relief due to juror misconduct, we need not address Wood's allegation that he was afforded the ineffective assistance of counsel when his counsel failed to impeach a witness.

The Garrard Circuit Court's order is affirmed.

ALL CONCUR.