COMMONWEALTH of Kentucky,
Appellant

v.

Joshua ABNEE, Appellee.

No. 2011–SC–000507–DG.

Supreme Court of Kentucky.

Aug. 23, 2012.

Jack Conway, Attorney General, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, Counsel for Appellant.

Roy Alyette Durham, II, Assistant Public Advocate, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Several weeks after Appellee Joshua R. Abnee was convicted of first-degree sodomy he moved for a new trial based upon an unsworn, unauthenticated note purportedly written by a member of the jury panel that convicted him. The note stated that the jury had been influenced by information not presented in evidence and that the writer had been pressured into voting to convict. The trial court denied the motion for a new trial. The Court of Appeals reversed and remanded the case for a hearing to ascertain the validity of the claim, and if true, whether the prejudicial effect of the occurrence would entitle Abnee to a new trial. We granted discretionary review to consider whether an unsworn document such as the one described above may be used to impeach the verdict of the jury in light of RCr 10.04 and the well-established common law rule against the impeachment of a jury verdict by a member of the panel.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joshua R. Abnee was tried in the Nicholas Circuit Court on two counts of first-degree sodomy. In due course, the jury returned a verdict of guilty on one count and not guilty on the other. There was no apparent irregularity in the verdicts or in the process by which those verdicts were reached. The foreperson of the jury stated that the verdicts were unanimous. The jury was also polled, and each juror confirmed in open court that he or she agreed with the verdicts as read by the judge. After the penalty phase and a subsequent sentencing hearing, Abnee received a sentence of imprisonment for five years.[1]

1. Abnee appealed, and his conviction was affirmed by the Court of Appeals (Case No. 2008–CA–001324.) *See Abnee v. Common-* *wealth,* 2010 WL 985313 (Ky.App. March 10, 2010).

Nearly three months after entry of the trial judgment (and four months after the trial), Abnee filed a motion for a new trial. The basis for the motion was a letter delivered to Abnee's counsel, purportedly written by a juror and addressed to the trial court. The letter, in full, states:

8/15/2008

Hon. Judge McGinnis [2]

I [the juror's name] was a member of the Jury during Joshua Abnee's Trial in April of 2008. I feel that during the trial there were [sic] reasonable doubt established and felt very pressured into changing my verdict to guilty when I felt that Josh was not guilty of the crime he was being charged with. When we entered the room to deliberate Josh's criminal record was already in the room and other members of the Jury started looking through it and before anything was said a couple Jury members said guilty from the get go. I feel Josh's reputation convicted him. This case has been eating at me ever since it happened. I am not the only Juror that feels this way, there are other [sic] but I felt that I had to come forward. Thank you for your time and patience.

Sincerely;

[The letter bears a signature of the juror's name.]

At the hearing on the motion, Abnee's trial counsel explained that two or three weeks after the trial, he "got word" that a juror wanted to speak to him. However-er/when he contacted the juror by telephone, the juror refused to speak to him. A few days later counsel received the above-quoted letter in the mail. At the hearing on the motion, Counsel argued that Abnee's criminal record included two prior convictions for unlawful transaction with a minor, which, he emphasized, could have been particularly prejudicial in a trial involving the sodomy of a minor because the convictions may suggest a pattern of illegal conduct involving children. He argued that if the letter was accurate, the jury had been exposed to improper information during the guilt phase deliberation so as to taint its verdict and call into question the constitutional validity of the conviction.

The trial court expressed appropriate concern about the possibility that Abnee's criminal record might have been left where the jury could see it, stating, "And I've got a problem with, if this in fact happened, if the jury went back there and there was a copy of his criminal record in the room and the jury looked at that and considered it. Then that creates a significant problem." Ultimately, however, the trial court overruled the motion for a new trial based upon the Commonwealth's argument that RCr 10.04 prohibited examination of the juror to ascertain the validity of the letter's allegation.[3]

A divided Court of Appeals reversed based upon its conclusion that the juror's

---

2. Although the salutation suggests that the letter was intended for the trial judge, Hon. Robert McGinnis, there is no indication it was ever actually sent to Judge McGinnis. The correspondence included no address for either the sender or the named addressee. It was brought into this case with Abnee's motion and how his attorney obtained it is not immediately apparent in the record before this Court, except that it was mailed to him.

3. The trial court also ruled that Abnee's motion for a new trial had to be denied because it was not presented within the time frame required by RCr 10.06(1)("The motion for a new trial shall be served not later than five (5) days after return of the verdict. A motion for a new trial based upon the ground of newly discovered evidence shall be made within one (1) year after the entry of the judgment or at a later time if the court for good cause so permits.").

allegation that the deliberations were influenced by extrinsic evidence (Abnee's criminal record) presented a challenge to the constitutional validity of the conviction that superseded the limitation imposed by RCr 10.04.[4] The Court of Appeals further opined that RCr 10.04 "may not be used to deny the accused his constitutional right to confront the witnesses and the evidence against him." It then remanded the matter to the trial court for an evidentiary hearing. We granted the Commonwealth's motion for discretionary review.

## II. PRESERVATION

█ The single issue presented in this case, as stated by the Appellant, Commonwealth of Kentucky, is: "Abnee was not entitled to a hearing on a motion for a new trial based upon the allegation in one juror's unsworn, unsupported, unverified letter." At the outset of our review, Abnee asserts that the issue is not preserved by similar arguments presented to the lower courts. We disagree. Our review of the record discloses that the Commonwealth's argument in response to the motion for a new trial was based upon RCr 10.04 and RCr 10.06(1) and clearly expressed the position that the unauthenticated, unsworn letter standing alone was not sufficient to trigger a serious inquiry into whether the jury verdict was valid. As such, we construe this issue as being adequately preserved.

## III. IMPEACHMENT OF A JURY VERDICT BY AN UNSWORN LETTER

The Commonwealth frames its argument as follows: "the sole issue before this Court is whether a purported juror's unsworn, unverified, uncorroborated letter alleging a deliberation irregularity is sufficient to warrant an evidentiary hearing on a motion for a new trial?" For the reasons stated below, we believe that such a letter is not sufficient to warrant an evidentiary hearing.

RCr 10.04 is Kentucky's current expression of the old and well-considered common law rule that prohibited the impeachment of a jury verdict by the testimony of one of the jurors.[5] RCr 10.04 states that "[a] juror cannot be examined to establish a ground for new trial, except to establish that the verdict was made by lot." The rule is firmly rooted in the early years of Kentucky jurisprudence. *See Johnson v. Davenport,* 26 Ky. 390, 393 (1830), holding:

4. In her dissenting opinion, Judge Combs asserted that the unsworn letter was an insufficient basis upon which to begin the process of disturbing a jury verdict and that the attempted challenge to the verdict was barred by RCr 10.04.

5. In *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300, (1915) the United States Supreme Court dates the rule back to 1785, in the English case of *Vaise v. Delaval,* 1 Term. Rep. 11, 99 Eng. Rep. 944 (K.B. 1785) in which the court refused to receive the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some states, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible. And, of course, the argument in favor of receiving such evidence is not only very strong, but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures (or courts exercising rule-making authority) generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule "would open the door to the most pernicious arts and tampering with jurors." "The practice would be replete with dangerous consequences." " 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' " (citations omitted.)

[T]he testimony of one or more of the jurors, to prove such misconduct of the jury as would invalidate their verdict, or to question the purity of the motives by which they had been influenced in rendering it, or to explain the ground, either of law or fact, which influenced them, with a view to impeach the verdict which they had returned, is inadmissible, according to the whole current of modern decisions, is inadmissible.... The dangerous tendency of receiving testimony of the jurors, for such a purpose, is too obvious to require comment. It would open the door so wide, and present temptations so strong, for fraud, corruption and perjury, as greatly to impair the value of, if not eventually to destroy, this inestimable form of trial by jury.

The dangers, then "too obvious to require comment," were more specifically described by the United States Supreme Court in *McDonald v. Pless,* 238 U.S. 264, 267–68, 35 S.Ct. 783, 59 L.Ed. 1300, (1915):

But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation; to the destruction of all frankness and freedom of discussion and conference.

■ The rule serves several important purposes. It aids in protecting the sanctity and finality of judgments based upon jury verdicts. It promotes open and frank discussion among the jurors during deliberations. By barring the use of a juror's testimony to attack a verdict, the rule protects individuals who have served on juries from potentially corruptive influences that, in the hope of altering a verdict, might otherwise be brought to bear against a former juror.

■ This Court has recognized "the wisdom of the longstanding rule in this Commonwealth that a jury verdict cannot be impeached through the testimony of jurors as to what occurred in the jury room, except to show that the verdict was made by lot." *Hicks v. Commonwealth,* 670 S.W.2d 837, 839 (Ky.1984). Testimony from a juror regarding anything that occurred in the jury room is incompetent evidence to impeach the jury's verdict. *Ruggles v. Commonwealth,* 335 S.W.2d 344, 346 (Ky.1960).

■ However, the rule is not absolute, and it has not been interpreted as the clear-cut exclusionary rule that its text appears to suggest. *Taylor v. Commonwealth,* 175 S.W.3d 68, 74 (Ky.2005). Indeed, we could not read it in such a way because the rule must give way to various constitutional requirements, including due process of law. *Id.* In this vein, on two occasions we have recognized that in *Doan v. Brigano,* 237 F.3d 722 (6th Cir.2001),[6] the Sixth Circuit Court of Appeals declared unconstitutional an Ohio rule which is similar to our RCr 10.04. *See Brown v. Commonwealth,* 174 S.W.3d 421, 429 (Ky.

6. Abrogated on other grounds as recognized by *Maples v. Stegall,* 340 F.3d 433 (6th Cir.

2003).

2005) and *Bowling v. Commonwealth*, 168 S.W.3d 2, 7 (Ky.2004). In *Doan*, a juror "conducted an experiment in her own home during the trial" to determine the truth or falsity of the defendant's testimony that "he did not see any of [a baby's] bruises on the evening of her death because the bathroom and the adjoining rooms were so dark[.]" 237 F.3d at 726–27. During the jury's deliberations, the juror relayed to the other jury members her findings that one could indeed see bruises in such lighting. 237 F.3d at 727. Under the applicable Ohio evidentiary rule, only "independent evidence from a source with firsthand knowledge other than the jurors themselves" could be admitted "as to an extraneous influence that was brought to the jury's attention during the trial or deliberations[.]" 237 F.3d at 730. The Sixth Circuit held that the rule, by denying the Ohio courts the ability to consider evidence of the jury misconduct in this case, denied Doan's right to confront the witnesses and the evidence against him, and thus clearly stood in conflict with Supreme Court precedent recognizing the fundamental importance of this constitutional right. 237 F.3d at 732; *Commonwealth v. Wood*, 230 S.W.3d 331, 332–333 (Ky.App.2007).

Further, construing the Supreme Court's decision in *Mattox v. United States*, 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917 (1892), the Sixth Circuit delineated between those jury matters that can, and those that cannot, be used to set aside a jury verdict:

> [In *Mattox*, the Supreme Court] held that a matter "resting in the personal consciousness of one juror" may not be used to upset a jury's verdict "because, being personal, it is not accessible to other testimony." [*Mattox*, 146 U.S.] at 148, 13 S.Ct. 50, 36 L.Ed. 917. The Court stated that it would not give the "secret thought[s] of one [juror] the

power to disturb the expressed conclusions of twelve." *Id.* In sharp contrast to the secret thoughts of jurors, the Court held that juror testimony as to "overt acts" of misconduct can be considered because the remaining members of the jury can testify as to whether or not those acts of misconduct actually occurred. *Id.* at 148–49, 13 S.Ct. 50. The Court recognized that, by drawing this distinction, verifiable evidence of a jury's consideration of extraneous prejudicial information could be considered by courts while still respecting the finality of jury verdicts by disallowing testimony as to the unverifiable thoughts of jurors. *See id.* at 148–49, 13 S.Ct. 50.

> Thus, the Supreme Court in *Mattox* held that, when addressing a motion for a new trial, courts should consider juror testimony concerning any overt acts of misconduct by which extraneous and potentially prejudicial information is presented to the jury, including juror testimony showing that a newspaper article relevant to the case was read aloud in the jury room.

237 F.3d at 732–33 (internal footnote omitted).

In *Brown*, this Court found that the facts before it were distinguishable from *Doan* because, even though the juror's affidavit indicated that "a juror had heard elsewhere about a matter that was also mentioned during the trial testimony[,]" there was no evidence of outside influence. 174 S.W.3d at 429. Further, in *Bowling*, a juror told a Department of Public Advocacy investigator that he believed the defendant had to prove he was innocent in order for the jury to reach a not guilty verdict. 168 S.W.3d at 7. We determined that prohibiting such testimony was consistent with *Doan* because the evidence fell into the category of a juror's "secret thoughts"

about which testimony could not be heard. *See also Commonwealth v. Wood,* 230 S.W.3d at 334 (jury's use of a dictionary falls into the category described in *Doan* permitting examination of the jury; i.e., it is an "overt act" about which a court may receive testimony in order to ensure a defendant is given a fair trial.).

██ Here, too, at least with respect to the alleged exposure of Abnee's prior criminal history, the alleged misconduct during the jury deliberations involved an overt act involving an extrinsic source of information which was alleged to have corrupted the deliberation process.[7] Similar to the newspaper article in *Mattox,* the experiment in *Doan,* and the dictionary in *Wood,* extraneous information by way of an overt act was, allegedly, improperly interjected into the jury deliberation process. As such we believe that the allegation falls within the constitutional exceptions to RCr 10.04 that, upon a proper presentation to the court, would justify further inquiry in the form of an evidentiary hearing. However, as further explained below, we conclude that the unauthenticated and unsworn statements contained in the letter do not raise the issue with sufficient dignity to challenge the jury verdict.

As can be seen by the discussion above, the bar to challenge a jury verdict based upon jury misconduct during deliberations is high. It follows that an unsworn letter, lacking authentication and verification, is insufficient to trigger the process for further inquiry regarding whether the jury verdict was tainted by the consideration of extrinsic information. Under the holding of the Court of Appeals, on remand, an inquiry into the validity of the jury verdict would conceivably necessitate bringing in the entire jury for examination, along with the bailiff, and perhaps, assuming it actually occurred, the potential culprits who may have left the criminal record in the jury room. This process will all have been triggered by an unauthenticated and unsworn document written, apparently, by a person who was unwilling to replicate her allegations under oath and who would not speak to trial counsel about the allegations.[8]

██ Thus, our holding is that an unauthenticated and unsworn letter from a lone juror, without more, is insufficient to trigger the process for further inquiry into the validity of a jury verdict by motion for a new trial. *Wheeler v. Commonwealth,* 395 S.W.2d 569, 571 (Ky.1965) ("Generally, it is essential that a motion for a new trial based on newly discovered evidence be supported by the affidavits of the accused, his counsel, and the new witnesses,"). In fact, it is fair to say that our system for obtaining a new trial under RCr 10.02 presupposes that there will be affidavits filed in support of the motion. RCr 10.08 ("When a motion for a new trial is supported by affidavits, the Commonwealth has ten (10) days after service of the motion within which to serve opposing affidavits, which period may be extended for an

7. The allegation in the letter that its author "felt very pressured" by other jurors to change her opinion would, of course, fall within the category of matters "resting in the personal consciousness of one juror" which could not support a challenge to the verdict.

8. Although perhaps not likely in this particular case, it is nevertheless worth. noting that under the rule applied by the Court of Appeals, an imposter posing as an actual juror could disrupt the finality of a jury verdict simply by concocting a false allegation of jury misconduct, and by letter, email, voicemail message, a newspaper "letter to the editor," or some other means, bring it to the attention of the trial judge or another officer of the court. From this it should be self-evident that additional verification is required before haling the jury back into court for an evidentiary hearing on its alleged improper conduct.

additional period not exceeding twenty (20) days either by the court for good cause shown or by the parties by written stipulation. The court may permit reply affidavits.").

In summary, because an unauthenticated and unsworn letter alleging jury misconduct is, without more, insufficient to trigger an inquiry into the validity of a jury verdict, the trial court did not abuse its discretion in denying Abnee's motion for a new trial, *Foley v. Commonwealth,* 55 S.W.3d 809, 814 (Ky.2000) (trial court's ruling on a motion for a new trial is reviewed for abuse of discretion), and the Court of Appeals erred by disturbing its ruling.

## IV.  CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is reversed, and the judgment of the Nicholas Circuit Court is reinstated.

MINTON, C.J., ABRAMSON, NOBLE, SCHRODER and SCOTT, JJ., concur. CUNNINGHAM, J., concurs in result only.