# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: DECEMBER 17, 2020
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0671-MR

KERRY BARLEY          APPELLANT

ON APPEAL FROM JEFFERSON CIRCUIT COURT
V.          HONORABLE ANGELA MCCORMICK BISIG, JUDGE
NOS. 17-CR-001181 AND 17-CR-001407

COMMONWEALTH OF KENTUCKY          APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A circuit court jury convicted Kerry Barley of first-degree assault, first-degree burglary, first-degree robbery, possession of handgun by a convicted felon, and of being a first-degree persistent felony offender (PFO). The trial court entered final judgment imposing an enhanced sentence of twenty-eight years' imprisonment. Barley appeals the judgment to this Court as a matter of right.[1]

He argues for reversal of the judgment because the trial court erred by (1) denying his motion for a new trial despite doubt cast on the validity of the verdict by defense counsel's post-trial conversation in a chance encounter with a juror, (2) improperly allowing into evidence a prior statement of identification

---

[1] Ky. Const. § 110(2)(b).

without proper foundation and bolstering testimony, (3) denying his motion for directed verdict on the PFO charge. We find no error in the trial court's denial of the motion for a new trial or the denial of the motion for directed verdict on the PFO charges. On the evidentiary issues, we find harmless error. Accordingly, we affirm the judgment.

## I. FACTS

According to the evidence presented at trial, Barley and Reece Watson spent the day together doing drugs in Watson's mother's home. When Watson's mother had enough of them in her home, Watson drove Barley in the early morning hours to a boarding house and dropped him off. According to Watson, Barley exited the car clad in a white painter's suit, a reflective vest, and a hardhat, armed with a gun.

Upon entering the boarding house, Barley posed as a representative of the gas company and pounded on the door of the room occupied by the victim, James Mathis. Once inside the room, Barley demanded money and drugs from Mathis before assaulting him and shooting him six times. Watson, who had remained parked outside, fled the scene when he heard shooting.

Upon learning of the boarding house incident from local news reports, Watson and his mother contacted Crimestoppers and the police. Based on witness statements, the police compiled a photo pack containing a picture of Barley from which Mathis identified him as the perpetrator. Barley was then arrested, indicted, tried, and convicted.

## II.     ANALYSIS

**A. The trial court did not err by denying Barley's new-trial motion in which he asked for an evidentiary hearing to examine a juror concerning that juror's post-trial statements allegedly expressing doubt about Barley's guilt.**

Supplementing his motion for a new trial, Barley's counsel averred (with supporting affidavit) that a few days after the trial ended and the jury finally discharged, she had a chance encounter with a member of the jury—a woman whom counsel was unable to identify by name. Counsel stated that after expressing curiosity about the possible involvement of other persons whose names surfaced in the testimony at trial, the former juror expressed doubt about Barley's guilt.

Following this conversation, defense counsel supplemented her motion for a new trial, asking for a delay in Barley's final sentencing and for leave to contact two women who were former members of the jury panel to ascertain which one of them had spoken to her in this chance encounter. Once identified, counsel requested leave to interview that former juror and to subpoena her to an evidentiary hearing.

After briefing from both parties, the trial court denied this request. The trial court noted in her order the absence of any alleged overt acts evincing jury misconduct. Further inquiry of this former juror, the trial court ruled, would only produce information about one former juror's private mental thoughts, which is not a valid basis to overturn the jury's verdict.

We review this ruling for abuse of discretion.[2]  A trial court's decision will only be considered an abuse of discretion if it was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[3]

Under Kentucky Rule of Criminal Procedure (RCr) 10.04 "a juror cannot be examined to establish a ground for a new trial, except to establish that the verdict was made through a lot."  In *Commonwealth v. Abnee*, we recently held that an unauthenticated and unsworn letter from a lone juror, without more, is insufficient to trigger the process for a deeper inquiry into the validity of a jury verdict by motion for a new trial.[4]

Applicable to the present case, *Abnee* sets the dividing line between those jury matters that may and may not be used to upset a jury's verdict.[5]  On the side of matters that may not be so used are those based upon the personal thoughts of a lone juror.[6]  On the other side of the line are cases involving overt acts of misconduct that may be further explored because the remaining jurors are available to verify what occurred.[7]

The current facts implicate only the private thoughts of a single juror, so the trial court did not abuse her discretion in denying Barley's attempt to

---

[2] *Abnee v. Commonwealth*, 375 S.W.3d 49 (Ky. 2012).

[3] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

[4] *Abnee*, at 55.

[5] *Id.* at 54.

[6] *Id.*

[7] *Id.*

impeach the verdict by offering potential testimony from a single juror who may have expressed her post-trial misgivings about the verdict.[8]

At the end of the trial in the present case, the trial court polled the jury, and each member affirmatively stated agreement with the guilty verdict. This fact helps solidify a conclusion that no error occurred in jury deliberations. Further, the juror's post-trial interaction with defense counsel was not initiated by the juror's intentional report of irregularity in deliberations. This was a parking lot conversation by happenstance. And the juror did not indicate that her decision to find Barley guilty had been influenced by threat or pressure or other deliberation misconduct. Finally, the conversation overall was apparently a discussion of the trial itself, and the juror's perspective on the quality of proof. This conversation did not indicate that the jury reached its guilty verdict by misconduct in deliberation.

## B. The trial court erred in admitting the officer's body-camera footage of the victim describing the perpetrator and stating he demanded drugs and money, but the error was harmless.

The Commonwealth sought to introduce as evidence the body-camera footage from one of the officers who responded to the crime scene. Barley filed a motion in limine to exclude it in toto. The trial court ruled the Commonwealth could play some portions of the video without audio to demonstrate the location of the victim when the police arrived and the victim's proximity to the crime scene. The trial court also allowed the Commonwealth

---

[8] *See Grace v. Commonwealth*, 459 S.W.2d 143, 144 (Ky. 1970) (holding that a juror affidavit asserting she did not agree with guilty verdict was insufficient to impeach that verdict).

to play portions of the video with audio so the jury could hear Mathis's own physical description of his assailant.

The Commonwealth presented portions of body-camera footage in its case-in-chief as part of the responding officer's testimony. When the audio became activated, Mathis could be seen and heard describing the physical appearance of his assailant. He described a male wearing a hard hat, and he offered a brief description of other identifiable features. Mathis could also be heard saying, "Somebody in that apartment must have been selling drugs because he was asking me for the drugs and the money."

Because the Commonwealth failed to lay the proper evidentiary foundation before offering Mathis's out-of-court statements made in the video, Barley argues the trial court committed a reversible error by allowing hearsay statements of prior identification and bolstering. Despite the Commonwealth's argument that these claims of error were not perserved, we will review the merits of these claims of error in admitting the evidence. We review such issues for abuse of discretion, upholding the trial court's ruling on evidentiary matters unless the decision is arbitrary, unreasonable, or unfounded by law.[9]

Under Kentucky Rules of Evidence (KRE) 801A(a)(3) and KRE 613, a statement of prior identification may be admitted after a proper foundation is laid. This Court has interpreted that to mean the declarant must testify about the prior identification before it is admitted and subject to cross examination.[10]

---

[9] *Matthews v. Commonwealth*, 163 S.W.3d 11, 19 (Ky. 2005) (citing *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996)).

[10] *Owens v. Commonwealth*, 950 S.W.2d 837, 840 (Ky. 1997) ("In this case, after the victim had testified that he made the out-of-court identification of appellant, the

6

Here, the trial court allowed the Commonwealth to offer Mathis's video statements identifying his assailant before Mathis testified. This is harmless error.

An error in admitting evidence will be found harmless unless the reviewing court finds a high likelihood the error substantially effected the outcome.[11] We find it inconceivable that this error effected the outcome of the trial because Mathis later testified to his statement of identification, and Mathis's perception, memory and narration of the identification could be tested by cross-examination.

Barley also argues another trial court error in allowing the jury to hear Mathis's claim that his assailant demanded drugs and money. The error here, he argues, is improper bolstering.

Under KRE 801A(a)(2), prior consistent statements may only be admitted after "some charge against the declarant of recent fabrication or improper influence has been made." We agree with Barley that admitting Mathis's statement in this context was error. But the error is harmless.

The video statement connecting the assailant with drugs and money was briefly played—a few seconds once in a four-day trial—and it was not used in the direct examination of Mathis. While the statement in the video indicated that the assailant, later identified as Barley, might be associated with drug dealing, it was a passing reference in the overall case against Barley. More

Commonwealth was entitled to introduce the hearsay statements of the police officers to corroborate the fact of the prior out-of-court identification."); *See Preston v. Commonwealth*, 406 S.W.2d 398 (Ky. App. 1966).

[11] *English*, 993 S.W.2d at 994.

7

importantly, three witnesses testified on direct examination that Barley had been involved in drug-related activity. It is unlikely that the single brief statement from the body-camera footage substantially affected the outcome at trial.

## C. The trial court did not err in denying Barley's motion for directed verdict on the PFO Charge.

Barley argues that the trial court erred by refusing to grant a directed verdict on the PFO charge. In support of this argument, Barley asserts a failure of proof by the prosecution because the Commonwealth failed to present admissible evidence of prior convictions. He argues that the trial court abused its discretion in the PFO and penalty phase of the trial by allowing the Commonwealth to introduce a grid chart prepared by a paralegal instead of introducing certified copies of Barley's prior criminal convictions.

We note without discussion the Commonwealth's objection to preservation, but we will treat the issue as preserved and review the trial judge's admission of evidence for abuse of discretion.[12]

We have held that certified copies of prior judgments do not have to be introduced if a qualified witness testifies from relevant documents to prove a PFO charge.[13] *Finnell v. Commonwealth* is also instructive.[14] In *Finnell,* the trial court erred when it allowed a probation officer to testify to the defendant's prior convictions based upon CourtNet records.[15] We found that to be error

---

[12] *English*, 993 S.W.2d at 994.

[13] *Commonwealth v. Mason*, 331 S.W.3d 610, 625, 631 (Ky. 2011).

[14] 295 S.W.3d 829, 832 (Ky. 2009).

[15] *Id.*

8

because accuracy of the records was an issue at trial, and the probation officer was not testifying from certified copies of the defendant's contested convictions.

The circumstances in the present case are distinguishable from *Finnell.* The paralegal testifying about Barley's prior convictions was relying on a summary of certified copies of the prior convictions. Significantly here, Barley does not contest the validity of any of the convictions or accuracy of the paralegal's testimony. Barley contends the evidence was insufficient because certified copies of the prior judgments were not introduced into evidence. As Barley acknowledges, the reliable proof of a prior conviction is a certified copy of court records or testimony from a witness reading those records. We find that the paralegal's testimony relaying Barley's prior convictions from a chart summarizing them that was compiled from official court records was sufficient evidence for the jury to find guilt on the PFO charge.

### III. CONCLUSION

We affirm the trial court's judgment.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Euva D. May
Louisville Metro Public Defender's Office

COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Jenny Lynn Sanders
Assistant Attorney General